REED, STORY AND SAMUEL SULLIVAN, PLAINTIFFS IN ERROR, vs. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. The record showing that the defendants were brought into court, that they appeared by counsel, plead to the indictment, were tried and convicted, is sufficient evidence of a proper arraignment.

2. When the bill of exceptions does not bring up all the evidence taken upon the trial of the cause, the court will infer that there was sufficient introduced to warrant the finding of the jury.

3. Exceptions to the charge of the court must be taken at the time the instructions to the jury so complained of are given, and the evidence of that fact must appear in the bill of exceptions.

4. To enable a party to avail himself of the error in the court refusing to instruct the jury as requested, the attention of the court must be called to the particular points upon which such instruction is asked and that before the jury shall have retired to consider of their verdict.

Writ of error to the Circuit Court for Orange county.

There is a sufficient statement of the facts in the opinion of the court.

*John W. Price* for Plaintiffs in Error.

The first error assigned is that the defendants were not arraigned previous to being put upon their trial. There was no plea entered by them, though the jury were empannelled and sworn to try an issue then joined between the State of Florida and the defendants at the bar, who could only be legally tried upon an issue which had previously been joined by the arraignment and plea of the defendants.

The provision of the criminal law is so positive in the requirements thereof, that all persons charged with a felony must be first arraigned and plead before such person is put upon trial. The proposition is so plain that I think it unnecessary to say more here. See Bishop's Criminal Procedure, 728, and 13 Fla. R., 632, where the court suggests how the arraignment shall be made.

If there was no plea entered to raise an issue, the verdict of the jury was illegal and void. See 2 Fla. R., 42.

The second assignment of error opens a much larger field for consideration than the first. The error is shown as manifest as the first.

The first inquiry then is, " What is an animal ?" " An organized living being, endowed with sensation and power of voluntary motion, and also characterized by taking its food into an internal cavity or stomach ; by giving carbonic acid to air, and taking oxygen in the process of respiration ; by

increasing in motive power or action aggressive force with progress to maturity."— *Webster.*

" An animal after it is dead changes to an inanimate mass—a carcass. The dead body of an animal, a corpse." *Webster.*

" *Animal Property.*—A name given to every animated being endowed with power of voluntary motion. In law it signifies all animals, except those of the human species." *Bouvier's Law Dictionary.*

We are all legally compelled to admit that as soon as an animal dies, from the moment death takes place in such animal it ceases to be animal; from the moment it is rendered motionless by death, it ceases to be an animal and becomes a carcass, a corpse.

The animal named and described in the indictment, for the altering of whose mark these defendants were indicted and put upon their trial and convicted solely and entirely by evidence which showed conclusively that the animal whose mark had been changed was dead before the altering had taken place, was the altering the mark of a dead hog— the carcass of a hog—which had at the time ceased to be an animal.

The Act of 1868, Sec. 51, page 78, says : " Whoever, &c., shall alter the mark of an animal with intent to claim the same, or to prevent identification by the true owner, shall be punished," &c. The general principle of law is that every person is presumed to be innocent until proved guilty, as shown by authorities hereafter cited. That being one of the charges in the indictment, the State undertook to prove that the mark of an animal had been changed.

The State did prove that there had not been an animal's mark changed, for the State's evidence showed the animal named therein was dead before the mark was altered—had before ceased to be an animal.

There should have been no evidence admitted unless rele-

vant to the issue. As soon as it was shown by the evidence that the animal named and described in the indictment was dead before the mark was altered, all evidence relating thereto should have been excluded by the court. See 1 Greenleaf on Evidence, page 71.

The third assignment of error covers a still larger field, one that should be closely examined, and every error committed therein be corrected, and the legal right to justice be accorded to every citizen entitled thereto, without unreasonable delay, in our land of constitutional liberty, where the citizen is presumed to be innocent until proved guilty.

The statute of this State requires the Judge of the Circuit Court to charge the jury upon the law of the case only. Sec. 8 of Act approved January 4, 1848. See Acts of 1847, page 10, and Secs. 1 and 2, Act approved March 2, 1877. See Acts of 1877, pages 42 and 43.

It will scarcely be contended that a charge of the court is legal or proper where only a portion of the law is given, more especially under the act of 1877. After the court has been requested in writing to charge in writing, whenever that request is made in writing according to law, it then becomes the duty of the court to charge the whole law applicable to the case. Having prefaced my remarks on this assignment of error, I will now examine the charge of the court as given in this case, from which we will learn and ascertain how far the requirements of the law were executed by the court in his charge given in the case at bar.

Without admitting the correctness of any portion of the charge of the court, I pass over what occurs therein before the following: "If a party cuts out the mark of an animal which he had no right to alter, it is for him to show that there are no circumstances nor intent involving fraud."

It is one of the elementary principles of evidence that whoever asserts an affirmative of any proposition, and asserts that a right has been disregarded or a wrong com-

mitted, it is incumbent on the party asserting the affirmative to establish that proposition according to the rules of evidence.

The charge of the court disregards this well-known elementary rule of evidence, and a well-known presumption of law, viz: " That every person is presumed to be innocent until proved guilty." That being one of the allegations of the indictment, it becomes necessary for the State to establish that allegation by evidence to the satisfaction of the jury. It is inevitable, a legal necessity, for the affirmant to establish that charge with as much certainty as any other charge.

The State by making that charge in the indictment undertook, or undertakes, to establish that allegation by proof. The court in this case changed the legal force of that proposition, made it incumbent upon the defendants to prove themselves innocent before the State has proved or established their guilt.

The mere cutting the ear of an animal is not in itself a violation of law; it may be wrongfully done and not be criminal; it must be fraudulently done, and done for one of the purposes named in the law, viz: " To prevent identification, or with intent to claim the same." But the court says that the mere fact of cutting out or altering the mark of an animal, without legal authority, constitutes the offence of crime, and compels the defendants to prove that they did not alter the mark of the animal named in the indictment to fraudulently claim the same, or prevent identification by the true owner.

They must prove that they did not commit a crime before the State proves that they have committed any offence, or are guilty of any crime.

This charge changes the whole fundamental rule of enforcing the criminal law, or to establish crime by the production of legal evidence, as well as the right to the pre-

sumption of innocence, thereby taking away the very inalienable right of the citizen; that uprooted and destroyed, convicted without proof of guilt, every guarantee is gone, and the legal presumption of innocence is no longer a protection or barrier; which is contrary to and against the law. See 1 Bishop's Criminal Procedure, Secs. 976, 978, 980, 987, 988, 989; 18 Wallace, U. S. S. C., 516; 7 Blackford, 421; 26 Maine, 312; 1 Gray, 61; 14 Gray, 415, 418.

The sixth assignment of error, that the defendants were entitled to any reasonable or rational doubt resting on the mind of the jury as to their guilt, is a legal proposition and right so well settled by criminal jurisprudence that I will refer to the authorities above cited, and leave that question with the court.

The seventh assignment of error is one which raises many important questions for and on behalf of the defendants. The grounds were argued in the Circuit Court, so far as counsel were allowed to do so, it being the opinion of the Circuit Judge that counsel had no legal right to argue a motion for a new trial, and could only do so by the permission of the judge of that court, though the statute of this State says "that the refusal to grant a new trial may be assigned as error." See Acts of 1847, page 10.

The material portion of said assignment has already been noticed in the remarks on the charge of the court.

The eighth assignment of error will only require me to call the attention of and refer the court to the following authorities, viz: 13 Iredell, 63; 30 Vt., 100; 1 Metc., 13; 6 Ohio, 467; 4 Strobart, 266; 36 Miss., 677; 29 Miss., 32; 20 Ark., 216; 7 Grattan, 641; 32 Vt., 491.

The jury were misled by the admitting of admissions of the defendants, believing that they were compelled to take the confessions of one against both.

The ninth assignment of error has already been disposed of in the authorities cited to support other assignments of

error, and which have been brought to the notice of the court.

*The Attorney-General* for the State.

1st. The record does show that the prisoners were arraigned, and thereby refutes the statement to the contrary implied in the first assignment of error. It shows a substantial compliance with the form laid down in Dixon vs. State, 13 Fla., 633.

It is true the record does not specifically state that the indictment was read to the prisoners, or in the language given in the Dixon case. It shows that they were " arraigned " and " plead not guilty."

In the Dixon case this court says, on page 634 : " There is so much of an arraignment in this record as identifies the prisoner and declares his personal presence in court, and whatever may be the rule when an arraignment is entirely omitted, we are satisfied that the failure to read the indictment, or to demand of the prisoner whether he is guilty or not guilty, and asking him how he will be tried, is cured by his appearing and pleading to the indictment. The purpose and the end of reading the indictment and making the demand is to advise the party of the accusation, and to learn what he has to say in reference thereto, and if he advises himself and answers the accusation by plea he waives these formalities, which are mere preliminaries looking to that result." State vs. Hughes, 1 Ala., N. S., 657 ; People vs. Corbett, 28 Cal., 330; Douglass vs. State, 3 Wis., 820; Cook vs. State, 26 Ga., 593.

2d. As to the second error assigned, to-wit: "That the court erred in allowing the witnesses to testify that the mark of an animal was altered after it was shown by the evidence that the animal was dead before the mark was altered," it is not shown by the record or bill of exceptions that any ex-

ception was made on the trial to the court allowing the witness to so testify. Nor is there any thing in the record or bill of exceptions to show that there was testimony to the contrary tending to prove that the animal was dead when the mark was altered.

3d. As to the third and fifth errors assigned, which charge that there was error in the charge of the court to the jury, we respectfully submit that the record does not show that any exception was taken at the trial to the charge of the court in any respect whatever.

" Exceptions to the charge cannot be sustained unless the instructions complained of were excepted to while the jury were at bar." Godwin vs. Bryan, 16 Fla.; State vs. Clark, 37 Vermont, 471; Phelps vs. Mayen, 15 How., 160; Nabenbruch vs. Shaver, 2 W. Va., 285; Mallingly vs. Moranville, 11 Mo., 604; McKill vs. Wright, 4 Iowa, 504; Anderson vs. Hill, 12 S. &. M., 679; Francis vs. State, 6 Fla., 306; Burns vs. Commonwealth, 3 Metcalf, Ky., 130; Error, 5th U. S. Dig., 1st series, sec. 2,150.

4th. As to the 4th, 6th, and 8th errors assigned, which complain of the judge not having charged the jury to a certain particular effect, we submit that there is nothing in the record or bill of exceptions which shows that the judge was requested to so charge the jury.

" An omission on the part of a judge to instruct the jury on a particular point, if no instruction be asked from him on that point, is not error." 1 Bp. Crim. Pro., sec. 980; State vs. Oneal, 7 Iredell, 251.

5th. As to the 7th error assigned, we reiterate the propositions and authorities submitted as to the 3d and 5th, with the remark that there were no exceptions taken at the trial to support it or the grounds of the motion for a new trial.

6th. The other assignments of error are merely general. Laws, Chap. 2096.

Mr. Justice Van Valkenburgh delivered the opinion of the court.

These defendants were tried upon an indictment found. for fraudulently altering the marks of an animal, under Section 54, Chapter 4, of " An act to provide for the pun-- ishment of crime and proceedings in criminal cases," ap- proved August 6th, 1868.

The first error assigned by the plaintiffs in error is, that there was no arraignment by the court of these defendants before trial as contemplated by the law. The record pre- sented to this court upon this point is as follows :

" Now on this day comes Alexander St. Clair Abrams,. who prosecutes the pleas of the State of Florida in this be- half, and J. W. Price and J. H. Allen, counsel for defend- ants, and the defendants being brought into court and ar- raigned pleaded not guilty, and thereupon comes a jury of good and lawful men, to wit : 1. W. A. Lovell; 2. Newton Ennice; 3. W. R. Barnhart; 4. M. G. Campbell; 5. M. J. Doyle; 6. John Ivey, who, being empanelled and sworn to try the issue between the State of Florida and the defend- ants according to the evidence, after hearing the evidence and the argument of the counsel, and having received the charge of the court, rendered the following verdict, to wit : ' We the jury find the prisoners guilty.' "

There is sufficient in this record to identify the prisoners, to show that they were brought into court ; that they were represented by counsel, plead to the indictment, were tried by a jury and found guilty of the offences with which they were charged. The very question raised by this assignment of error has been fully considered and determined in this court in the case of Dixon vs. The State, 13 Fla., 631..

The counsel for the defenants, after verdict, moved for a new trial upon several grounds; the first being " that the said defendants were illegally tried, having been tried and

convicted by six persons empanelled as a jury, which was illegal and contrary to the constitutional rights of the defendants." This ground of error having been disposed of by this court in the case of Gibson vs. the State at the last term, was waived upon the argument of the case in this court. The other assigned grounds of error made and argued upon such motion for new trial, all related to the charge of the court to the jury, save only the sixth point, which was as follows: " And for newly-discovered evidence material to their defence in said cause." From the record it appeared that this motion was made and overruled by the court on the 23d day of May, and on the 8th day of the subsequent August two affidavits were filed, which seem to have been made to be used upon such motion, but neither of these affidavits relates in any way to the discovery of new evidence. The record does not show that all the evidence given upon the trial is incorporated therein. Only a portion of the evidence of some of the witnesses is given. The judge who signs the bill of exceptions expressly notes thereon over his official signature this statement: "In signing the above bill of exceptions, I don't say that the above specifications of the testimony are accurate, as I kept no record of the testimony of the witnesses." Under such circumstances, the court must infer that the evidence introduced upon the trial of the cause was sufficient to warrant the finding of the jury, and authorize the court below to overrule the motion for a new trial.

No exception to the introduction of any of the evidence which is set out in the bill of exceptions, or to any ruling of the court, seems to have been taken during the trial, and there is nothing appearing upon the face of the record to suggest that any evidence was admitted except with the consent of the defendants. The third and fifth errors assigned are, that the court erred in its charge to the jury in two different and distinct portions thereof, but we do not find

in the record any evidence that any exception was taken by the counsel for the defendants to any specified or particular part of the charge upon the trial, and that therefore the court cannot review those errors if they exist. The rule is well settled that the exceptions cannot be reviewed unless they were taken on the trial and at the time when the instructions so complained of were given to the jury, and the evidence of that fact must appear in the bill of exceptions. Godwin vs. Bryan, 16 Fla.; Cameron vs. The State, ib.; Hasbaugh vs. City of Monmouth, 74 Ill., 367; 2 Phillips Ev., 1,000, and notes.

The fourth, sixth, and eighth assignments of error have for their ground the failure of the court to charge the jury upon certain points in each of said numbered assignments separately mentioned. There is not in the record any request made upon the part of the defendants by their counsel to the court to instruct the jury upon any one of these several points. Such instructions should have been asked by the counsel if they were deemed essential at the time, or before the court charged the jury, and had the court then refused, exceptions should then and there have been taken to enable counsel to avail themselves of the alleged errors upon review. The attention of the court should be called to the particular points upon which it is asked to instruct the jury, and this must be done before the jury shall have left their jury box; if such request is not made until after the jury shall have retired to consider of their verdict, it is too late. 1 Bishop Crim. Pro., 980, and cases cited; 2 Phillips' Ev., Cowen & Hill's Notes, 1004.

The judgment must be affirmed.