THE STATE v. PERIGO.

1. **Murder in First Degree:** INDICTMENT. Where it was distinctively averred in an indictment for murder that the killing was committed willfully, deliberately, premeditatedly and with malice aforethought, every element of murder in the first degree was charged, (Code, § 3849,) and the defendant was properly put on trial for that offense.

2. **Criminal Law:** CHANGE OF VENUE: DISCRETION OF COURT. An application for a change of venue on the ground of prejudice in the county is addressed to the sound discretion of the court, and a ruling denying an application for such a change will not be interfered with on appeal, unless an abuse of discretion is shown; (following cases cited;) and *held* that, in the light of the facts of this case, (for which see opinion,) there was no abuse of discretion in that regard.

3. **Homicide:** SELF-DEFENSE: ASSAULT INDUCED BY DEFENDANT. If the defendant, after having held the deceased at bay with a revolver, stated that the revolver was not loaded, thus leading the deceased to make an assault upon him, in resisting which he shot and killed the deceased, *held* that this would not preclude him from availing himself of the plea of self-defense, if the killing could otherwise be justified on that ground, unless his purpose in stating that his revolver was not loaded was to create an occasion or excuse for taking the life of the deceased.

4. ———: ———: RIGHT OF TRESPASSER WHEN ASSAILED WITH DEADLY WEAPON. No one is justified in resorting to the use of dangerous or deadly weapons in resisting a mere trespass upon his property; and where the owner assails a mere trespasser with a deadly weapon, the latter is not precluded, because he is a trespasser, from defending himself, even to the taking the life of his assailant, if such killing would otherwise be justifiable in self-defense.

5. ———: ———: RIGHT OF WRONG-DOER. One who has taken the life of an assailant, but who was himself in the wrong, cannot avail himself of the plea of self-defense; but the wrong which will preclude him from making that defense must relate to the assault in resistance of which the assailant was killed.

6. ———: MALICE: INFERENCE FROM DEADLY WEAPON. An instruction that "malice is *proved* by the selection and use of a deadly weapon, in a deadly manner, without lawful excuse," *held* erroneous. (*State v. Townsend*, 66 Iowa, 741, followed.)

7. ———: EVIDENCE: FORMER QUARREL BETWEEN DEFENDANT AND DECEASED. Evidence of a quarrel between defendant and deceased, which occurred about a year before the killing, was properly admitted to show ill will on the part of defendant toward the deceased.

VOL. LXX—42

*Appeal from Adams District Court.*

MONDAY, JUNE 14, 1886.

THE defendant was accused of the crime of murder, committed, as was charged in the indictment, in the killing of one John Hidinger. He was convicted of murder of the second degree, and sentenced to a term of imprisonment in the penitentiary, and from that judgment he appeals to this court.

*W. A. Spurrier, Thomas L. Maxwell, J. L. Brown* and *Smith McPherson,* for appellant.

*A. J. Baker, Attorney-general,* for the State.

REED, J.—I.  The following is the indictment against the defendant: "The grand jury  *  *  *  accuse

1. MURDER in first degree: indictment. Robert Perigo of the crime of murder of the first degree. The said Robert Perigo,  *  * * in and upon the body of one John Hidinger, then and there being, willfully, feloniously, premeditatedly, and of his malice aforethought, did commit an assault with a deadly weapon, being a pistol, then and there held in the hand of the said Robert Perigo, and loaded and charged with gunpowder and leaden balls; and then and there the said Robert Perigo, with the specific intent to kill and murder the said John Hidinger, willfully, feloniously, deliberately and premeditatedly, and of his malice aforethought, shot off and discharged the contents of said deadly weapon at, against, and into the body of the said John Hidinger, thereby willfully, deliberately, feloniously, premeditatedly, and of his malice aforethought, inflicting upon the body of the said John Hidinger a mortal wound, of which mortal wound the said John Hidinger then and there died.  *  *  *"

The district court ruled that the indictment charged the crime of murder of the first degree, and put the defendant

on trial for that offense. Counsel for the defendant contend that the language of the indictment charges murder of the second degree only; but we are of the opinion that the ruling of the district court is right. It is distinctly averred in the indictment that the killing was committed willfully, deliberately and premeditatedly, and that it was done with malice aforethought. Every element of murder of the first degree, as defined by our statute, (Code, § 3849,) is alleged to have been present in the killing. The present indictment contains the same averments as that in *State v. Shelton*, 64 Iowa, 333, which we held charged murder of the first degree. See, also, *State v. Townsend*, 66 Iowa, 741.

II. The killing of said John Hidinger occurred on the seventh day of May, 1883. The indictment was returned on the nineteenth of the following October. During that term of the court defendant was arraigned, and pleaded not guilty. He then filed a motion for a continuance, on the ground that he would not be able to prepare for trial at that term. This motion was sustained, and the cause continued to the next term, which convened on the seventeenth of the following March. On the morning of the second day of that term he filed a petition for a change of venue, on the alleged ground of excitement and prejudice against him in the county. This petition was verified by defendant and three disinterested inhabitants of the county, and in support of the application he filed the affidavits of twelve other citizens of the county, and the state filed the affidavits of thirteen residents in resistance of it. The district court overruled the petition, and the cause was tried in that county. It was alleged in the petition that the friends and relatives of said Hidinger were well and favorably known in the county, and had a controlling influence upon the people of the county; that, soon after the killing, false and exaggerated statements concerning the transaction were published in three newspapers which had a general circulation in the county; that these publications reflected

2. CRIMINAL law: change of venue: discretion of court.

severely upon defendant's character, and greatly inflamed the public mind, and prejudiced the people against him; that prominent citizens of the county had openly advised the people to lynch him, and that the officers who at the time had him in custody were apprehensive that he would be taken from their custody by the people, and summarily dealt with. It is also alleged that defendant believed that the excitement and prejudice continued at the time the petition was verified, and that it would prevent him from having a fair and impartial trial in that county. The witnesses whose affidavits were filed in support of the petition swore to the existence of excitement and prejudice among the people of the county at the time of the preliminary examination, which was held soon after the killing. They also swore to the publication in the newspapers at that time of statements calculated to inflame the people against defendant, and some of them swore that rumors were rife in the community at the time of an organization among the people in that portion of the county in which the killing occurred to lynch defendant. But none of them claimed to have had any personal knowledge of the existence of such organization. They all swore, however, that, in their opinion, defendant could not have a fair trial in that county. The witnesses whose affidavits were filed by the state in resistance of the petition swore that they were acquainted with the feelings and sentiments of the people in their neighborhoods, and that no excitement or prejudice existed against defendant which would prevent him from having a fair and impartial trial in the county.

The application was addressed to the sound discretion of the district court. It has often been held by this court that, unless an abuse of discretion in denying the application for a change of venue is shown, the decision will not be interfered with. *State v. Mewherter*, 46 Iowa, 88; *State v. Ray*, 50 Id., 520; *State v. Williams*, 63 Id., 135. Considering all of the facts and circumstances disclosed by the record in the present case, we cannot say that the district court

abused the discretion with which it is clothed by the statute. It is doubtless true that a very considerable excitement was created by the killing, and that some prejudice arose against the defendant soon after the occurrence. But this, in a great measure, was confined to the portion of the county in which the killing occurred. We do not believe that the people of the county generally were affected by it. Nearly a year had elapsed since the occurrence, and it is reasonable to suppose that the excitement created by it had in a great measure subsided. The petition and affidavits filed in support of it afforded but little positive evidence of the existence of excitement and prejudice at the time they were filed. They related almost exclusively to the excitement which had existed at about the time of the preliminary examination, and much that was contained in the affidavits was mere hearsay, and many things that are stated as matters of fact were very clearly not within the personal knowledge of the affiants. In addition to this, the defendant had obtained one continuance of the cause to enable him to prepare for his trial. Whatever of prejudice there was against him existed at the time of the indictment, and was then known to him and his counsel; but no effort was made at that term to obtain a change of venue. It is true, an effort was made to explain this circumstance, but still it was one which the court might properly take into account in determining whether a change ought to be granted; and, when it and the other matters shown by the record are considered, we cannot say that the court erred in refusing to grant the change.

III. The killing of Hidinger is not denied by defendant, but he claims that he acted in self-defense. The parties were

**3. HOMICIDE: self-defense: assault induced by defendant.** neighbors, and had lived for a number of years on adjoining farms. On the day of the killing defendant went to Hidinger's place, and took away a dog which each of the parties claimed to own. After they had parleyed for some time as to his right to take the animal, defendant caught it, and was proceeding to tie a strap

or string about its neck for the purpose of leading it away, when deceased approached him, having in his hand a pitchfork, with which he had been loading straw or manure on a wagon. Defendant testified that when deceased came within a few feet of him he raised the fork, and was apparently about to strike him with it; but this statement was denied by another witness, one Penniston, an employe of Hidinger, who was present at the time. Both Penniston and defendant testify, however, that the latter at this time drew a revolver, which he pointed at Hidinger, and warned him not to approach any nearer to him. Deceased thereupon stopped, and, after some further talk, in which Penniston joined, defendant started away, taking the dog with him. Penniston testified that after defendant had gone a short distance he stopped, and stated that he had scared them both with an empty revolver, and that there were no cartridges in the revolver; but defendant denies that he made this statement. Penniston and the deceased followed defendant, the latter still having the pitchfork in his hand. When they reached a ditch about one hundred yards from where the controversy began, defendant again drew his revolver, and warned deceased not to come near him. He testified that Hidinger at that time was within a few feet of him, and that he had raised the fork, and was again apparently about to strike him with it; but this is denied by Penniston. Soon after this the parties reached a fence, which was composed of two barbed wires and posts, the top wire being about three feet from the ground. Defendant, in attempting to cross this fence, pressed down the top wire with one hand, and stepped one foot over it. He then became entangled in the wire, or his clothing was caught by the barbs, and while he was in this position, standing astride of the wire, deceased came upon him with the fork. One blow was struck by the deceased with the fork, which took effect on defendant's head, cutting through his hat, and causing a severe contused wound of the scalp. Two or three shots were fired by defendant,

one of which fractured the right arm of deceased, and another took effect in his body inflicting a mortal wound.

The district court, after laying down the general rule that one who is assaulted by another under such circumstances as clearly indicate an intention to take away his life, or do him some enormous bodily injury, may kill the assailant, if that reasonably appears to be the only means of preserving his own life, or of preventing the threatened injury, gave the following instructions:

"(26) If you find, upon the evidence, that the defendant went upon the premises of deceased with the revolver which has been introduced in evidence; and that said revolver was loaded; and that, when defendant was about to take the dog, the deceased, Hidinger, was seeking to prevent defendant from taking the dog; and the defendant drew said revolver, and caused the deceased to stand at bay, or cease his efforts to prevent defendant from taking the dog; and the defendant afterwards stated that he had scared deceased with an empty revolver, and led the deceased to believe that the revolver was not loaded, and thereby induced him to renew his efforts to prevent the defendant from taking said dog; and, while attempting to prevent defendant from taking said dog, the defendant shot and killed deceased,— then you are instructed that the defendant cannot avail himself of the plea of self-defense.

"(27) If you find from the evidence that deceased, or members of his family, claimed to own the dog in dispute; and that defendant also claimed that he was the owner of the dog,—in other words, that there was a dispute as to who was the owner and entitled to possession of the dog; and that the dog was in possession of the deceased,—then you are instructed that defendant would have no right to go upon the premises of the deceased, and take the dog by force, and against the objections of the deceased; and if you find that defendant armed himself with the revolver which has been introduced in evidence, and went upon the premises of the

deceased, and took the dog by force, and against the objections of the deceased, then the defendant would be in the wrong in thus attempting to take the dog by force, and against the objections of the deceased; and if you find that deceased was trying to prevent defendant from taking said dog from his premises, and while he was so acting defendant shot and killed him, then you are instructed that defendant cannot avail himself of the plea of self-defense."

The doctrine of the instruction first quoted is that if defendant, after having once intimidated the deceased, and caused him to desist from his efforts to prevent him from taking the dog from his premises, represented to him that the revolver with which he had intimidated him was not loaded, and by that means caused him to renew his resistance, and afterwards shot and killed him while he was opposing him, the killing is not excusable. Under the instruction, it would make no difference that the deceased had become an aggressor before the shooting, or that he was then in the act of committing a felonious assault upon defendant; for by it the jury were told, in effect, that if the killing was done under the circumstances stated, the defendant cannot avail himself of the plea of self-defense, no matter what the extent of the danger to him may have been. We think this is not the law. If defendant had gone upon the premises of deceased with the intention of provoking a conflict with him, and had made the statement that his revolver was not loaded, for the purpose of inducing deceased to attack him with the weapon which he had in his hands, it may be that he would not be permitted to plead in excuse of the killing that his life was endangered by the assault upon him. This would certainly be true if his purpose in the transaction was to create an occasion or excuse for taking the life of the assailant. But, under the instructions, his motives and purposes in going upon the premises, or in making the statement, if he did make it, are entitled to no weight in determining whether the killing is excusable; for by its terms he is precluded

from availing himself of the plea of self-defense, if he made the statement, and the deceased was thereby led to believe that the revolver was not loaded, and made the attack upon him in that belief. It is very clear, we think, that the killing was not necessarily inexcusable because committed under those circumstances. If defendant did not make the statement attributed to him with the intention of provoking the assault, but deceased was induced by it to make it, he might lawfully defend himself against it, even to the extent of taking the life of the assailant, if that reasonably seemed to be necessary for the preservation of his own life, or the protection of his person from great injury.

The second instruction quoted holds, in effect, that if defendant was committing a trespass upon the premises of

4. ——: ——. right of tres-passer when assailed with deadly weapon.

deceased, and while the latter was resisting such trespass he shot and killed him, such killing would not be excusable on the ground of self-defense. We think, also, that this instruction, as applicable to the state of facts which the evidence tended to prove, is erroneous. When the first two shots were fired the deceased had attacked defendant, and was either in the act of striking him with the fork, or had struck him a violent blow therewith. Defendant, at the time, was so entangled in the wire of the fence that he could neither escape from deceased nor avoid the blow; and there was evidence tending to prove that after he was knocked down by the blow deceased attempted to strike him a second blow, and that the fatal shot was fired at the moment that attempt was made. The holding of the instruction is that, if what defendant had previously done, or was then doing, about the taking of the dog, amounted to a trespass, the killing was inexcusable, whatever the circumstances immediately attending it may have been. It is true that deceased had the lawful right to oppose with force the act which defendant was doing, if it amounted to a trespass against his property. But no one is justified in resorting to the use of dangerous

or deadly weapons in resisting a mere trespasser, and if, in making resistance against a wrong of that character, he purposely takes the life of the wrong-doer, such killing is felonious. Whart. Hom., 185. It may be conceded that everything that was done by defendant in the transaction, up to the moment of the final attack by the deceased, was unlawful and wrongful; yet, if that assault was felonious, and was of such a character as to clearly indicate an. intention by the assailant to take defendant's life, or to inflict on him some enormous bodily injury, there is no valid ground for holding that he was precluded from the right to defend himself against it by the mere fact that he had been, or then was, engaged in the commission of a trespass upon the property of the deceased. If defendant had been engaged in cutting a tree upon the land of the deceased without his consent, and while so engaged deceased should have made an attack upon him with the evident intention of taking his life, it would hardly be contended that he was precluded from defending himself against such assault because of the act in which he was engaged, and which was the occasion of the assault. The general doctrine undoubtedly is that one who has taken the life of an assailant, but who was himself in the wrong, cannot avail himself of the plea of self-defense. But the wrong which will preclude him from making that defense must relate to the assault in resistance of which the assailant was killed. If at the time the assault is made upon him he is engaged in the commission of an act which is wrongful, but which is independent of the assault, he may lawfully defend himself against it, to the extent even of slaying the assailant, if it is felonious, unless, indeed, his act is of such a character as to justify the assault. The mere fact, then, that defendant was engaged in committing a trespass when deceased attacked him at the fence, does not necessarily constitute him a wrong-doer in the matter of the assault, or preclude him from making the defense of self-defense.

IV. In another instruction the jury were told that "malice is proven by the selection and use of a deadly weapon, in a deadly manner, without lawful excuse." In *State v. Townsend*, 66 Iowa, 741, we held that an instruction in the same language was erroneous.

6. ——: malice: inference from deadly weapon.

V. A witness was permitted, against defendant's objection, to testify to a quarrel between defendant and the deceased, which occurred about one year before the killing. This evidence was offered for the purpose of proving ill will or hostility on the part of defendant towards the deceased. The objection urged against its admission was that it was so remote in point of time from the transaction in question that it was entitled to no weight as evidence of the existence of hostility or malice at that time. ' The objection was properly overruled. The lapse of time between that occurrence and the one in question could properly be considered by the jury in determining the weight which should be given to the evidence; but it could not be determined, as matter of law, that defendant was not actuated in the transaction in question by the feelings which had been engendered by the former occurrence.

7. ——: evidence: former quarrel between defendant and deceased.

Other questions are argued by counsel, but, in the view we have taken of those considered, they are not important.

The judgment will be reversed, and the cause remanded.

REVERSED.