JACKSON BASSETT AND HENRY BASSETT, PLAINTIFFS IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. Where the record shows that defendants were required on a day of the term of the court to plead to an indictment regularly returned by the grand jury against them and it is recited that on that day they were at the bar in custody and having been formally arraigned and plead not guilty to the charge, and thereupon came a jury &c., it sufficiently appears that defendants plead not guilty to the charge preferred against them by the indictment.

2. Where there is sufficient in the record to show the presence of the accused in court during the proceedings, the omission of a formal arraignment is waved by pleading to the indictment.

3. After a witness for the State had testified to facts showing a foundation for the introduction of dying declarations of a party killed he was asked to state what the deceased said to him, to which question an objection was made on the ground that it might be relevant and it might not, and it was requested that the witness be confined in his testimony to the time of the killing, the court ruled that the witness could state what was said by the deceased as to the homicide and what directly led up to it, and thereupon the witness narrated a conver-

sation with the deceased which related in part to some matters transpiring before the killing, defendant moved to strike out all the testimony of the witness as to dying declarations not immediately connected with **res gestae** of the transaction causing death which was not granted; before the argument of the case the court of its own motion struck out all of the testimony of the witness as to the dying declarations of the deceased except such parts as related directly to the difficulty in which the deceased received his fatal wound, and instructed the jury not to consider in making up their verdict, the testimony stricken out: Held no reversible error in the action of the court.

4. A request to charge may properly be refused when it has already been fully covered by the charges given.

5. The principle that the aggressor in a personal difficulty, one not reasonably free from fault, can never be heard to acquit himself of liability for its consequences on the ground of self defense must, under the statutes in this State relating to homicide be applied with reference to the facts of the particular case and is applicable only to personal difficulties, that is, the acts of aggression or wrong doing to preclude a party from relying upon the right of self defense must relate to the assault in resistance of which the assailant was killed.

6. Under a state of facts tending to show that the accused first assaulted the deceased with a deadly weapon in the resistance of which he was killed, it would be error to instruct the jury that if the accused brought on the difficulty with the deceased, or was the aggressor therein, he would still be entiltled to the benefit of the right of self defense provided they believed that in bringing on the difficulty he had no design to feloniously maim, wound or kill the deceased. Such an instruction would ignore the character of the aggression and assert a right of perfect self defense under conditions that might not authorize it, as one can not rely upon the plea of self defense when he knowingly and wilfully brings upon himself

the very necessity which he seeks to set up as a justification for his act. He may not necessarily be guilty of murder in the first degree, or murder in any degree, still if he brought on the difficulty and was the aggressor in a personal conflict that resulted in death he should not escape all punishment.

7. Testimony in this case held sufficient to sustain a verdict of murder in the second degree.

Writ of error to the Circuit Court of Jackson county.

The facts of the case are stated in the opinion of the court.

*M. D. Price,* for Plaintiff in Error.

*W. B. Lamar,* Attorney-General, for the State.

MABRY, J.

Plaintiffs in error were jointly indicted for murder in the first degree and were convicted of murder in the second degree. From the judgment of the court sentencing the accused to the penitentiary they sued out writ of error.

The first error assigned is that the record fails to show the accused were present during the entire trial, or that they were arraigned upon the indictment against them or plead thereto. The record shows that on the twenty-eighth day of May, 1901, a day of the Spring term of the court that year, an indictment for murder in the first degree was properly returned by the grand jury against plaintiffs in error, and it is recited that on the fifth day of June, 1901, a day in said term, the defendants

were required to plead to said indictment, and thereupon an order was made as follows:

"STATE
  vs.                                } MURDER.
JACKSON BASSETT AND HENRY BASSETT.

Now at this day came the State by its attorney and the defendants herein, each being at the bar in custody, and each having been formally arraigned and plead not guilty to the charge herein, thereupon came a jury of twelve good and lawful men, to-wit," &c. It appears from the record that the trial extended to the third day from the beginning, and upon the assembling of the court after each daily adjournment it is recited that "now at this day came the State by its attorney and the defendants herein each being at the bar in custody and each having been on a former day formally arraigned and plead not guilty to the charge herein, thereupon came the same jury," &c. It is contendeed that it is not shown by the record that defendants were present at the arraignment or that they plead to the indictment. Defendants. were required to plead to the indictment on the fifth day of June, a day in the spring term of the court, and on that day they were at the bar in custody, and having been formally arraigned and plead not guilty to the charge therein, thereupon, that is on that day, came a jury named, and heard a part of the evidence. The record sufficiently shows, we think, that the defendants plead not guilty to the charge preferred against them by the indictment, and that the trial was had upon such plea. It was held in Dixon v. State, 13 Fla. 631, that where there was suf-

ficient in the record to show the presence of
the prisoners in court during the proceedings,
the omission of a formal arraignment, is waiv-
ed by pleading to the indictment. See, also, Reed
vs. State, 16 Fla. 564. The record entry before us was
evidently designed to show that on the fifth day of June
the prisoners were brought to the bar and having then
been formally arraigned and plead not guilty, the jury
was organized and the trial proceeded. If it sufficiently
shows that there was a plea of not guilty to the indict-
ment, this will do, and we are of opinion that this is
sufficiently shown.

The second and third assignments of error may be
considered together. They are, first, that the court erred
in permitting the witness Medlock, in testifying to dying
declarations of the deceased, to state matters not part of
the *res gestae* of the homicide; and, second, that the court
erred in refusing to grant the motion of defendants to
strike out all the testimony of said witness as to dying
declarations not immediately connected with the *res gestae*
of the transactions causing the death of the deceased.
The witness Medlock was introduced by the State to
prove a dying declaration of the party killed, and after
laying the foundation for the introduction of such evi-
dence he was asked to state what the deceased said to
him. This was objected on the ground that it might
be revelant and it might not, and it was asked that the
testimony be confined to the time of the killing, as any-
thing prior thereto would be merely a recital, and not
a dying declaration. The court ruled that the witness
might state what was said by the deceased as
to the homicide and what directly led up to

it; to which ruling the defendants excepted. The witness then narrated a conversation he had with the deceased not long before his death, and this conversation related in part to some matters transpiring before the killing, and which counsel for defendants contends form no part of the transaction in which deceased lost his life and which may properly be proven as a dying declaration. The bill of exceptions shows that before the final arguments for the State and the accused, the court of its own motion struck out all of the testimony of the witness Medlock, as to the dying declarations of the deceased, except such parts of the statement as related directly to the difficulty in which the deceased received his fatal wound, and instructed the jury not to consider, in making up their verdict, the testimony of the witness Medlock stricken out. The ruling of the court in finally excluding this testimony of the witness Medlock was as comprehensive and embraced all that the accused objected to and asked to be excluded. The objection to the testimony was in a general way without specifying any particular part further than to confine it to matters immediately connected with the *res gestae* of the homicide or transaction causing the death, but without considering the character of the objection we think there could have been no injury to the accused in view of the ruling and express caution of the judge that the jury should not consider any part of the declarations except such as related directly to the difficulty in which the deceased received his fatal wound.

The fourth asignment of error is that the court erred in refusing to give the first special request to charge, as follows, *viz*: "the innocence of the defendants and each of them must be presumed by you until the case against them

2 S. C.

is, in all of its material circumstances, proven beyond a reasonable doubt. To find the defendants or either of them guilty, the evidence must be so strong and cogent as to show the guilt of the defendants, or such one or both of them so being guilty, to a moral certainty." We do not think there was any error in refusing to give this request. It appears from other instructions given at the request of the defendants that the court submitted to the jury the law bearing upon the defenses of each defendant respectively arising from the evidence presented, and further instructed, at their request, that "the law presumes every man to be innocent until his guilt is proven beyond a reasonable doubt. Every ingredient necessary to constitute an offense must be proven beyond a reasonable doubt before you can return a verdict of guilty against the defendants." And again the court charges that "as jurors charged with the solemn duty in hand, you must carefully, impartially and conscientiously consider, compare and weigh all the testimony, and if after doing this you find that your understanding, judgment and reason are satisfied and convinced by it to the extent of having a full, firm and abiding conviction to a moral certainty that the charge is true, then you should find the defendants guilty. If, however, after carefully considering, comparing and weighing all the testimony, both for the State and the defense, there is not an abiding conviction to a reasonable and moral certainty as to the truth of the charge, or if, after having a conviction, it is yet one which is not abiding or stable, but wavers and vacillates, or is one of which there is not a moral certainty, then the truth of the charge is not made out beyond a reasonable doubt, and you should find a verdict of not guilty." The form of this charge has been

approved by this court in Lovett v. State, 30 Fla. 142, 11 South, Rep. 550. We are of opinion that the instructions referred to and set out covered fully all the ground of a reasonable doubt, and it was not error to refuse the request in reference to which exception was taken. Barker v. State, 40 Fla. 178, 24 South. Rep. 69; Long v. State, 42 Fla. 509, 28 South, Rep. 775; Richard v. State, 42 Fla. 528, 29 South. Rep. 413.

The fifth assignment of error is expressly abandoned. The sixth and seventh may be considered together. The sixth relates to the refusal of the judge to give request number 12 as presented, and in modifying it, and the seventh is in reference to the refusal to give request number 13.

Request 12 as presented is as follows: "If you should believe from the evidence that the defendant Henry Bassett, entered into the difficulty with 'the deceased, Wright Caldwell, voluntarily, or that he brought it on, but that he entered into the difficulty with no design to kill the deceased, or to do him great bodily injury, and at the time of entering into such difficulty he was under the influence of violent passion aroused by the conduct of the deceased, and that while in such passion he killed the deceased, but without a premeditated design, and that such killing was under such circumstances as did not justify him upon the grounds of self defense, or if you have a reasonable doubt as to whether or not the defendant was acting from a premeditated design to effect the death of 'the deceased, or under the heat of violent passion, then in such event you should acquit the defendant, Henry Basset, of the offense of murder, and will fiind him guilty of manslaughter. *Before you can, however, refuse the de-*

*fendant, Henry Bassett, the benefit of this plea of self defense on the ground that he voluntarily entered into the difficulty, you must find that he, at the time of entering into the same, had a felonious intent to maim, wound or kill the deceased."* The court struck out the last sentence italicised, and gave the other portion of the request. The thirteenth request which the court refused reads as follows: "If you should believe that the defendants brought on the difficulty with the deceased, or were the aggressors therein, but should further believe that in becoming such aggressors or in bringing on such difficulty, defendants had no design to feloniously maim, wound or kill the deceased, then in such event the defendants would not be deprived of the benefit of the right of self-defense." This court has approved the following statement as a correct proposition of law, *viz*: a necessity brought about by the party who acts under its compulsion can not be relied upon to justify his conduct. The aggressor in a personal difficulty, one not reasonably free from fault, can never be heard to acquit himself of liability for its consequences on the ground of self-defense. Lovett v. State, 30 Fla. 142, 11 South. Rep. 550; Ballard v. State, 31 Fla. 266, 12 South. Rep. 865; Padgett v. State, 40 Fla. 451, 24 South. Rep. 145; Mercer v. State, 41 Fla. 279, 26 South. Rep. 317. The principle in the cases cited was approved with reference to the facts to which it was applied. In the Lovett case, the first one decided, in referring to the contention made that at common law where the slayer did not begin the fight, or having begun it, endeavored to decline it and killed his adversary, it was chance medley and excusable, the court say there was in the circumstances of the case no conduct of the deceased

which could be tortured into a justification or excuse of the killing, as making a case of self-defense, nor was there any endeavor by the accused to decline the fight. In the Padgett case it was directly held that where a party is himself at fault and provokes the difficulty, he can not justify killing his assailant in the affray that he himself brought about, unless he in good faith withdraws from the combat in such manner as to show his adversary his intention in good faith to desist. Reference was made to the fact to show that the jury might rightfully infer that the accused went armed with a winchester rifle to the house of the deceased with the intent to do an unlawful act directly precipitating a deadly conflict. It was conceded in the Mercer case that the principle was correct in the abstract, but it was contended that it was not applicable to the facts of that case. The court said the facts warranted the charge, and from them the jury might well have concluded, as no doubt they did, that the accused went to the house of the deceased armed for the express purpose of bringing on a deadly conflict with him.

· The principle we have approved, it will be observed, goes only to the extent that the party under the conditions stated cannot justify his conduct, or acquit himself on the ground of self-defense, that is, he can not escape all punishment, unless he retires from the contest in good faith when his right of self-defense is restored. Our statute on the subject of homicide provides that "the killing of a human being is either justifiable or excusable homicide, or murder or manslaughter according to the facts and circumstances of each case." Sec. 2377 Revised Statutes. Justifiable homicide is when committed by public officers and those acting by their command in their

aid and assistance, in obedience of legal process or official duty, and a homicide may be justifiable when committed by any person in either of the following cases: (1) When resisting any attempt to murder such person, or to commit any felony upon him or her, or upon or in any dwelling-house in which such person shall be; (2) When committed in the lawful defense of such person or of certain named persons related to him, when there shall be reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished; or (3) when necessarily committed in attempting by lawful ways and means to apprehend any person for any felony committed, or in lawfully suppressing any riot or in lawfully keeping and preserving the peace. Section 2378 Revised Statutes, amended by Chapter 4967 acts of 1891. Homicide is excusable when committed by accident and misfortune in lawfully correcting a child or servant, or in doing any other lawful act by lawful means with usual ordinary caution, and without any unlawful intent, or by accident and misfortune in the heat of passion upon any sudden and sufficient provocation, or upon a sudden combat, without any dangerous weapon being used, and not done in a cruel or unusual manner. Section 2379 Revised Statutes. Our statute also defines murder in the first, second and third degrees, the first degree being the unlawful killing of a human being when perpetrated from a premeditated design to effect the death of the person killed or any human being, or when committed in the perpetration of or in the attempt to perpetrate any arson, rape, robbery or burglary. Murder in the second degree is when the killing is perpetrated by any act imminently dangerous to another and evincing a

depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual; and the third degree is when the killing is perpetrated without any design to effect death by a person engaged in the commission of any felony, other than arson, rape, robbery or burglary. Section 2380 Revised Statutes. Killing by fight in a single combat, commonly called a duel, with deadly weapons, and the throwing from the track any railroad engine or car by wilfully moving or misplacing, or in any manner interfering with any railway switch, or by moving any rail from any railway track, or in any manner injuring any railway track, or by placing any obstruction thereon, and death of any person shall result thereby, is also declared to be murder in the first degree. Section 2381 and 2382 Revised Statutes. Manslaughter is defined to be the killing of a human being by the act, procurement or culpable negligence of another, in cases where such killing shall not be justifiable or excusable homicide nor murder according to the provisions of the statute. The highest degree of murder is the unlawful killing of a human being with a premeditated design to effect the death of the person killed, or some human being, and, except in the cases made murder in the first degree when the killing is done in the perpetration of certain designated felonies, the premeditated design must exist before the party can be convicted of the highest degree of this offense. In the cases made murder in the first degree when the killing takes place in the perpetration of certain felonies or the doing of certain acts, a premeditated design to take life need not necessarily exist, as the statute has made the killing when done in the perpetration or

doing of such acts murder in the first degree. When the killing is done without any design to effect death by a person engaged in the commission of any felony, other than arson, rape, robbery, or burglary or in a duel or throwing an engine or car from the track, it is murder in the third degree. The killing by the act, procurement or culpable negligence of another, in cases where such killing shall not be justifiable or excusable homicide or murder in any of its degrees, will be manslaughter. The statute not only makes it justifiable for any person to kill in resisting an attempt to murder him or commit a felony upon him, or upon or in any dwelling-house in which he may be, but it fully recognizes the right of self-defense in favor of such person. He may justifiably kill when committed in the lawful defense of himself, and certain persons standing in relationship to him when there shall be a reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished.

Under our law of homicide, which we have stated more fully than usual, in order that what we say may the more readily be understood, we have applied the principle that an aggressor in a personal difficulty, one not reasonably free from fault, can never be heard to acquit himself of liability for its consequences on the ground of self defense. Some courts have eliminated the word "reasonably" and hold that he must be free from fault, but we have approved the principle in the form stated. Lovett v. State, *supra.* In its application under our system, due consideration must be paid to the facts of the case. If one become the

aggressor in a personal difficulty, having a premeditated design to effect the death of a person whom he kills, or if he with said design does any act or resorts to any device in order to get the deceased to assault him so as to have a pretext to kill, then he will be guilty of murder in the first degree, and the right of self defense does not exist. If the homicide is perpetrated in the commission or attempt to commit arson, rape, robbery or burglary, or the killing in duel or by throwing an engine or car from the track, he would likewise be guilty of the first degree of murder, regardless of specific intent to kill and self-defense will not avail, and the principle has no application to such cases.  If a person kill, but without any design to effect death while engaged in the commission of a felony, other than arson, rape, robbery or burglary, he will be guilty of murder in the third degree, and again the right of self defense can not exist.  If a killing is unlawful, not justifiable or excusable, nor murder in any of its degrees as defined by the statute it is manslaughter. It is apparent, therefore, that the purpose and intent with which a party engages in a personal difficulty resulting in death must be kept constantly in mind in determining the grade of the offense and culpability of an accused. Getting beyond the acts mentioned in the statute in reference to which the grade of the offense is definitely fixed, the court must consider the nature and quality of the act, the doing of which will so far curtail one's right of self defense that if he kill another, though to save his own life, he will yet be guilty of a felonious homicide in some degree.  It can not be that every wrongful act will make one an aggressor so as to deprive him of the right of self-defense within the principle stated. When we descend in gradation of wrongful doing be-

low the acts mentioned in our statutes in respect to which specific offenses are established, the application of the principle under many circumstances may demand careful consideration. It would be very difficult and impracticable to undertake to state a general rule to govern all cases. Cartwright v. State, 14 Tex. Ct. App. 486. Under our statement of the rule the accused must not be reasonably free from fault and the aggressor in a personal difficulty; that is his wrong doing to preclude him from relying upon a self-defense must relate to the assault in resistance of which the assailant was killed. The principle is applicable only to personal difficulties. State v. Perigo, 70 Iowa 657, 28 N. W. Rep. 452. Enough has been said in explanation of the rule to determine the correctness of the ruling in refusing the request which the accused desired the court to give.

The portion of the charge stricken out and the one refused by the court sought in the main to enforce the view that if the accused brought on the difficulty with deceased, or were the aggressors therein, they would still be entitled to the benefit of the right of self-defense, provided the jury believed that in bringing on the difficulty they had no design to feloniously maim, wound or kill the deceased. The defense of which they sought to avail themselves by the charge is a perfect defense of justification. The court had already charged on the subject of self-defense and the charge refused asserts the right of such defense without abridgment, if the jury believed the accused in becoming the aggressors had no felonious intent to maim, wound or kill the deceased. The character of the aggression is not stated, but however greatly at fault in bringing on the difficulty, they might still avail themselves of

the benefit of the right of self-defense if they did not have a felonious intent to maim, wound or kill. If the accused according to the evidence were at fault at all in the final difficulty that ended in the death of the deceased, they, or one of them aided and assisted by the other, committed an assault upon him with a deadly weapon. The charge, however, lays down the broad proposition that though the accused brought on the difficulty or were the aggressors therein, they were still entitled to the benefit of the right of self-defense provided the jury believed that when they entered into the difficulty they had no felonious intent to maim, wound or kill. In our opinion this is not a correct proposition of law. Independent of other considerations it invokes the right of a perfect self-defense under conditions not authorizing it. One can not rely upon the plea of self-defense who willingly and knowingly brings upon himself the very necessity which he seeks to set up as a justification of his act. He may not necessarily be guilty of murder in the first degree which we have seen depends upon the intent, except in special cases, or murder in any degree, still if he brought on the difficulty and was the aggressor in a personal conflict that resulted in death he can not escape all punishment. He would at least be guilty of manslaughter under our statute. The court did not, in our judgment, err in refusing to give the charges denied. The question involved in the refused requests has given rise to much discussion in other States and the decisions are not entirely harmonious on the subject. They are extensively reviewed in the annotated case of Foutch v. State, reported in 45 L. R. A. page 687. In following our previous decisions we think the principle should be applied in accordance with the views here expressed.

The only other contention is that the verdict of murder in the second degree can not be sustained by the evidence. Under Chapter 4392, laws of 1895, the verdict can not be set aside upon the ground that it is contrary to the evidence if the latter would have supported a finding, or if the court would have sustained a verdict, of guilty of a greater offense included in the indictment. There was testimony produced by the State that would clearly have supported a verdict for murder in the first degree. This testimony is found in that given by the witnesses Henry Pittman and Charles McNealy, as well as others. Under the rule established since the statute referred to the verdict can not be set aside. McCoy v. State, 40 Fla. 494, 24 South. Rep. 485

Judgment affirmed.