REUBEN B. GARNETT ET UX., APPELLANTS, VS. THE JACKSONVILLE, ST. AUGUSTINE AND HALIFAX RIVER RAILWAY COMPANY, APPELLEE.

The construction of a railway to be operated by steam along the streets of a municipal corporation to be used for a private purpose on a line of route not authorized by the charter of the company proposing to construct it and authorized only by the municipal corporation in a resolution clearly beyond its powers, may be a public nuisance. But if so, it is to be abated by a suit in behalf of the State. The owner of land or lots abutting upon the street over which the railway is proposed to be constructed has not an equity to enjoin its threatened construction as a public nuisance, operating to his special and peculiar injury, where the road intended to be constructed is an ordinary surface railway to be operated by steam.

Appeal from the Circuit Court for St. Johns county.

The facts of the case are stated in the opinion.

*C. M. Cooper* for Appellants.

890 SUPREME COURT.

Garnett et ux. v. J., St. A. & H. R. R. R. Co.—Argument of Counsel.

ᵗ " The corporate authorities of a town have no right to appropriate the public streets to any other uses than that of travel or right of way to which they were dedicated and the convenience of the whole public; and they cannot lawfully obstruct the streets with public or private buildings; and any person whose property is especially injured thereby may have the aid of the courts of equity to restrain such improper appropriation." Lutterloh vs. Mayor, &c., of Cedar Key, 15 Fla., 306.

There is no allegation in this case as to where the fee of the street is; but in such case, where complainant alleges that his lot bounds on the street, the fee will be presumed to be in him to the centre of the street. Higby & Riggs vs. Camden and C. R. R. Co., 19 N. Jersey Eq., (4 C. E. Green) 277.

But the complainants did not allege in their bill the fee to be in themselves, because they believe it to be in the City of St. Augustine, and it is with view to that state of facts in St. Augustine, Pensacola, and probably old Fernandina, that this court must declare the law.

Under the Spanish law the streets of a city were the property of the corporation for the common use of all the inhabitants. They were inalienable. No one could appropriate any part of them to a private purpose, nor " usurp more of the common use and servitude than that to which he was justly entitled, nor disturb any other in the use of it, nor render it less fit for public purposes." To alter a street, or to take any portion of it for a public use, for it could not be taken for a private use, required the joinder of the King and the municipal corporation, proceeding in accordance with the forms of law, and also, it seems, compensation to adjacent land owners. 4 American State Papers, (Gales' and Seaton's Edition) 230, 233; Las S. Partidas (M. & Carleton's Translation by Authority of

State of Louisiana) Vol. 2, par. 5, title 5, law 15, page 670; Vol. 1, Ibid, par. 3, title 32, law 23, page 447.

The nature of the property in street and commons of the city, and the purposes for which it was held, remained the same, though Florida was ceded by Spain to the United States. This is so evident that it is not necessary to cite cases to that effect, though they could be cited by the dozen.

The commons of St. Augustine, moreover, were confirmed to the city by public act of Congress, the same as used and enjoyed under Spain, with the provision that they shall forever enure to the purposes for which they are granted, and shall not be alienated without the consent of Congress. Act February 8th, 1827, chapter 9, section 3, U. S. Statute at large, vol. 4, page 202. This court will take judicial notice of what was the law of this State when a Spanish province. This has been frequently decided by the Supreme Court of the United States. And under Spain the owner of an adjacent lot, while he did not own the soil of a street, had a right to the free use of it, and to have it unobstructed, and not burthened with any structure injurious to the use or value of his adjacent lot, and that no one should usurp any more than his share of the use of it, to his special injury; and this right of the adjoining owner was a right of property appurtenant to the lot and passing with it. 4 Am. St. Pa., (Gales' & Seaton's Ed.,) page 230, 233.

American law is, as we believe we can show hereafter, the same, as applied to the circumstances of this case.

The right of the owner of land to the use of the adjoining street and to have the street free from any nuisance, or from any new structure, alteration, obstruction or unlawful use, which is of special injury to him or his property, whether he is the owner of the land over which the street

is laid out or not, is as much property as the land itself, and protected by the Constitution, and will be protected by the courts, as any other property, by injunction or otherwise, as the case may require. Cooley's Con. Lim., Mar., p. 545 ; Lackland vs. North, Missouri R. R. Co., 31 Mo., 180 ; Haynes vs. Thomas, 7 Ind., 38 ; Protzman vs. Indianapolis, &c., R. R. Co., 9 Ind., 467 ; Bingham vs. Doane, 9 Ohio, Hammond, 165, 168 ; 2 Dill. Mun. Cor., sec. 730, (581,) page 724 and note 1.

" Municipal corporations have no power to give a railway company permission to occupy a public street without express legislative authority ; the general control of their streets which is commonly given municipal charters, not being sufficient for this purpose." Cooley's Con. Lim., Mar., p. 544 ; Milhan vs. Sharp, 27 N. Y., 611 ; People vs. Kerr, 27 N. Y., 188 ; Randall vs. Jack. St. R. R. Co., 19 Fla. ; Inhabitants of Springfield vs. Connecticut R. R. Co., 4 Cush, 71.

And unless expressly authorized by the Legislature, a steam railway in a street of a city is *per se* a nuisance. Milhan vs. Sharp, 27 N. Y., 627 ; People vs. Kerr, 27 N. Y., 188 ; Randall vs. Jack. St. R. R. Co., 19 Fla. ; 2 Dill. Mun. Cor., sec. 722, (533).

If the fee of the street is in the adjoining landowners, as is always presumed unless the contrary is shown, it is their private property and cannot be be taken for a private purpose, even under authority of the Legislature, and with full compensation. Where the fee is in the city, it is only in trust for certain uses of the whole public, and any attempt to divert it to private uses or to abridge the free use of it is an attempted breach of trust which will be enjoined by a court of equity upon the application of any one specially injured thereby. Lutterloh vs. Cedar Keys, 15 Fla., 306; LeClerk *et al.* vs. Trustees of Gallipolis, 7

Ohio, Hammond, 218; Brown vs. Manning, 6 Ohio, Hammond, 298.

It is unnecessary to argue that property, whether the fee of the street or the easement in the free, unobstructed and undiminished use of the street on the side adjoining a man's land fronting thereon, can only be taken under right of eminent domain, if there had been any exercised in this case, by authority of the Legislature for a public purpose, and not for any private purpose. As to what is a public purpose, it is not sufficient that there may be some public benefit, but the use of the road must be public. Cooley's Con. Lim., 530, 531; Mill's Em. Domain, sec. 4.

Thus, the Legislature cannot authorize the laying out of a private road across the lands of unwilling persons, though the road be necessary to the person seeking to establish it, and full compensation to the unwilling land owners be provided. Cooley's Con. Lim., 530, 531; Osborn vs. Hart, 24 Wis., 89; Wild vs. Dieg, 43 Ind., 455; Taylor vs. Porter, 4 Hill N. Y. 140; Dickey vs. Tennison, 27 Mo., 373; 25 Iowa, 540; 34 Ala., 311, and numerous other cases.

But further, having shown that this contract, grant or license is void because the City Council had no authority to make it, it is also void because the railway company have no authority to receive it or to act on it. It is wholly *ultra vires.* The said railway company have no power under their charter to build, maintain or operate one yard of road for a private use. See Charter, McC. Dig., Appendix, p. 1025, sec. 1; also General Incorporation Act, R. R's., McC. Dig., p. 274, sec. 1.

By statute of this State " printed copies of private acts may be given in evidence without being specially pleaded, in any judicial proceeding." McC. Dig., p. 514, sec. 7.

The printed act incorporating this company, contained in McClellan's Digest, was produced to the Circuit Court

and read without objection to show the want of power in the railway company to build or operate a private track, and was considered by the court, although complainant was not obliged to do this as the burthen of showing authority for taking the street was on defendant. When a corporation is attempting to do an act *ultra vires*, any person interested in the corporation, or who would be injured by the act, may have an injunction against the corporation in the premises. Fla., A. and G. C. Co. vs. P. and G. R. R., 10 Fla., 146 ; High on Injunctions, sec. 412 ; Field on Cor., sections 264, 273, 408.

The instrument under which appellee seeks to justify is not even made to it, but to the " The Jacksonville, St. Augustine and Halifax Railroad Co." In this sort of grant against public interest as much particularity ought to be required as in a pleading, and the alleged grant here is not to this corporation.

The City Council seeks to grant a perpetuity in this street, or what may be a perpetuity ; it is to last until one year after the completion of a certain hotel building not begun, and which may never be completed. This it cannot do. Milhan vs. Sharp, 27 N. Y., 627.

In such a case as this, of continuing obstruction and injurious use of a highway, a party will not have to bring numerous suits for damages ; but if there is any particular injury to him he will have his injunction. Milhan vs. Sharp, 27 N. Y., 625 ; Williams vs. New York Cen. R. R. Co., 16 N. Y., 97, 111 ; Corning vs. Lawrence, 6 Johns. Ch., 439.

" It is no objection that the wrong complained of constitutes a public nuisance, or that a number of persons are injured, provided the complainants are subjected by it to any special injury." Milhan vs. Sharp, 27 N. Y., 625 ; Alden vs. Pinney, 12 Fla., 391, 392 ; Doolittle vs. Supervisors of

Broome county, 18 N. Y., 160; Corning vs. Lawrence, 6 John. Ch., 439; Atty. Gen. vs. Nichol, 16 Ves., 338.

Certain Florida cases, it has been claimed by appellee, are against appellants' case. This we cannot see. As we have shown, the leading case of Lutterloh vs. Cedar Key is directly in our favor. 15 Fla., 306. The case of Randall vs. Jack. St. R. R. Co. only decided that the court would not enjoin a horse railway being built under an ordinance of the city authorized specially by act of the Legislature as a common carrier, for the transportation of all persons as passengers; and when the court considered that there was no sufficient danger of serious injury shown. What has that to do with such a case as this? In that case the court says: " If the facts in this case showed extreme probability of irreparable injury to the property of the plaintiffs, or that it would endanger their lives or health, or prove a material injury to the comfort of their existence, this court would be of opinion that the injunction should have been continued till the final hearing." 19 Fla.

Have we not done all this?

In Geiger vs. Filer the court refused to enjoin a mere tramway to a wharf for the transportation of everyone's freight, and the case being principally a dispute about title to property and riparian rights; and in which case all the testimony was to the effect that the tramway was not injurious to complainant, and he having abandoned that part of his case in the court below and declined to make an issue on it. 8 Fla., 325, 333.

In the case of Thebeaut vs. Canova the court decided that it would not enjoin the erection of a steam-mill on the defendant's own land, where there was no probability shown of substantial injury to any one. And at the same time the court declares that it will enjoin a nuisance though on the defendant's own land, if it appears that there will be mate-

rial injury to the comfort of those who dwell in a neighboring house.    11 Fla., 143, 171.

In Alden and Wife vs. Pinney the court decided that it would not enjoin the erection of an ice-house in the waters of Pensacola bay, where a wide street intervened between the lot of complainant and the ice-house, and he did not show any danger of any injury to him or his property at all.    And the court said that if he had shown any special and serious injury to him he could have had his injunction. Alden vs. Pinney, 12 Fla., 391, 392.

This court has decided in many cases that notwithstanding the answer denies the allegations of the bill, (which this answer does not) that if there is a strong presumption that the complainant may prove entitled to relief on final hearing, or if there is a reasonable doubt in the matter as to whether upon the answer the injunction ought to be dissolved, it will be retained until the final hearing.    Allen vs. Hawley, 6 Fla., 142; Carter vs. Bennett, 6 Fla., 214; Young et al. vs. McCormick, 6 Fla., 368; Linton vs. Denham & Palmer, 6 Fla., 533; City of Apalachicola vs. Ap'l'a Land Co., 9 Fla., 340.

To assist the court in the discretion with which it is vested as to whether it will, on answer, dissolve injunction or not, and especially where there are allegations of irreparable injury in the bill, the court will hear read, before or after the answer is filed, affidavits in support of the injunction which may contradict the answer, and the court will give them due weight in its decision.    Poor vs. Carleton, 3 Sumner, 83 ; 3 Dan'l Chan., p. 1768, note 2 ; Peacock vs. Peacock, 16 Vesey, 49 ; Morphett vs. Jones, 19 Vesey, 350.

Such has always been the practice in Florida.

In this case the affidavits in support of the bill and restraining order were read and filed without objection ; they

are, as they show, by free-holders of St. Augustine; give facts, and are unusually respectable, strong and numerous, and ought to have had much weight in the cause.

*Jno. T. & Geo. U. Walker* for Appellee.

MR. JUSTICE WESTCOTT delivered the opinion of the court.

The bill in this case was filed by the appellants, Garnett and wife, setting up that the present terminus of the Jacksonville, St. Augustine and Halifax River Railway Company was at the head of the shell-road leading north of the gates of St. Augustine and about the line of the city limits; that said company is building their road into the city limits and intend to lay the said railroad on the side of a street next to the property of plaintiff, Mary J. Garnett; and that they propose to operate their road with steam locomotives; that "she is the owner and seised in fee simple of a large piece or lot of land within the city of St. Augustine, and having an extensive front on said street on which it bounds on the east for about nine hundred feet; that your orators reside on said property adjacent to said street and that they have divided and platted said land into lots for buildings and residences and for sale; that the said piece of land cost Mary J. Garnett $8,000 last winter," the winter of 1882; that said street "is one of the most public and most used for driving and walking in said city of St. Augustine, and the only wide street in the city ; that said railroad is about to run right along and upon said street, taking a great portion thereof nearly its whole lengh for about a mile and that the said railway thereon will be a great public injury and nuisance, and particularly to your orators; * * * that said street or avenue is the only pleasant and attractive drive near St.

Augustine, and is so used by the population of said city and visitors thereto, and is therein a great public resort for health and pleasure; that it is also a portion of the city rapidly improving, has many residences on each side of it and some very handsome villas; that the chief value of the property along said street is by reason of the handsome drive, which is shelled, as residence property; that by the building of said railway down said street, road or avenue the same will be utterly spoiled as a drive and as a residence street, horses will be frightened, vehicles damaged, property, life and limb endangered, and the adjacent property will be greatly and irremediably injured in value, and your orators will be greatly and immediately and irremediably damaged in the premises; that they have to go to the business part of the town, by reason of the distance, in a conveyance drawn by a horse, and further, that they have a family of small children, and that said railway in front of their door will endanger the lives of their family; that the proposed line of the railway to be built on said street is not a part of the main line of said railway, is not a part of its line of public transportation, is not on the line or its right of way to its depot, is not demanded by any public necessity or convenience, but is only a branch, switch or spur, thrown out for about a mile on this public street; that said company pretend that they have permission from the City Council to operate a railway on said street for one year and that they are building the same to carry materials for a projected hotel."

Plaintiffs allege that the true intention of the said company is to get down their rail and maintain it then perpetually; that there is no necessity to keep said railway on said street for a year to transport material for one year.

Plaintiffs pray a perpetual injunction against the con-

struction and operation of the road by the company so far as it " would run in front of their property."

Upon the filing of the bill a temporary injunction was granted.

The defendant answered admitting that it intended to construct a railway or track along the shell-road mentioned, on the side of the road next to the property of complainant, and that it intended to operate it with steam locomotives, but denies that it intends to lay the track on the part of said road which is shelled, or so as to obstruct that part of the road ordinarily used for drives, or in any way to obstruct the side-walk.

Defendant also admits all the allegations of the complainants' bill touching the nature of the shell-road, except that it is the only pleasant and attractive drive near St. Augustine. It admits that this portion of the city is rapidly improving, and that complainants have divided and platted their lands as they allege.

Defendant denies that by the laying of the said railway the property of defendant will be injured in value, or that the operation of the road will endanger the life, health or comfort of the plaintiffs, or the members of their families, to any greater extent or in any other way than does the building and operating steam railways generally through inhabited regions.

Defendant makes the following exhibit to the answer:

"*Resolved*, That the Jacksonville, St. Augustine and Halifax Railroad Company be and are hereby permitted to lay a temporary side-track or switch from the north end of the shell-road, the present southern terminus of said railroad, to the site of the new hotel soon to be erected near the old city for the purpose only of delivering lumber and other freight for the erecting and completion of said hotel, such side-track or switch to be parallel with the shell-road

and between the said shell-road and the side-walk on the west line thereof, to be so constructed as not to obstruct the side-walk or roads and to be removed by said railroad company within one year from date thereof; that the said railroad company shall keep in good repair the several crossings in front of residences along said road, and not to allow trains to be run at a greater rate of speed than six miles per hour.

"Passed in council at special meeting.

"JOHN G. LONG, President.

"July 20, 1883."

The above resolutions are entirely satisfactory and agreed to by the J., St. Aug. and H. R. R. Co.

A. M. LYON, President.

By H. S. MING, Superintendent.

It is admitted that this resolution was passed by the City Council of the City of St. Augustine.

And defendant avers that it intends to construct and operate the said railroad in strict conformity to and compliance with all and singular the terms and conditions of the said resolution and not otherwise.

It denies all statements of the bill to the effect that it intends to construct or operate said railway upon any other route, in any other mode, or for any other purpose than is declared and prescribed in said resolution and denies all allegations in the bill to the contrary.

It denies that the construction and operation of the road in the manner and for the purposes stated would prevent the sale of the lots of the complainants or would be a public nuisance.

Upon the coming in of the answer, the injunction was dissolved, the plaintiffs submitting affidavits of several persons setting up, so far as plaintiffs are concerned, nothing

stronger in support of his equities than he has himself alleged.

In all bills for injunctions to prevent threatened nuisances, both the character of the nuisance, as well as the nature of the injury that will result therefrom, should be clearly set forth. For this reason these affidavits, which the statute authorizes, so far as they go to show the probable result of the construction of this road as to the property of the persons making them, are admissible only as showing that the act threatenened, if accomplished, would be a public nuisance. They are entirely irrelevant when considered with reference to the matter of special damage to plaintiffs. The equity of the plaintiff here depends upon the injury threatened to her property, not to that of her neighbors.

From this order dissolving the injunction this appeal is taken, and the granting of this order is the ground of appeal set forth by appellants in their petition of appeal.

We have stated the contents of the pleadings more fully than usual in this case as the respondent, the railroad company, insists that the plaintiffs have failed to do more than to state that the threatened act which they seek to restrain is the construction upon this street on the side next to the property of the plaintiffs of an ordinary surface railroad, the motive power of which is to be steam, and that the general allegations of irreparable injury and other allegations of the same character in the bill, cannot be made the basis of the action of the court. What is the rule as to the contents of a bill in such case and the manner of setting forth the character of the nuisance and the nature of the threatened injury? In the case of Thebeaut and Glazier vs. Canova, 11 Fla., 173, which was a bill to enjoin the erection of a steam mill upon the ground that it would be a nuisance, this court

said " the court must act upon facts and not opinions, and these facts must clearly show that the plaintiffs are entitled to the relief asked." Now the only fact here set forth as to the nature of the acts complained of is that what is threatened is the construction of a steam railway on the side of a street at a place where the plaintiff, Mary J. Garnett, is an abutting proprietor. It is not alleged that the railway threatened to be constructed is other than an ordinary surface railway to be operated by steam.

The general rule is that injunctions against threatened nuisances will not be granted except in extreme cases where the threatened use of property or the act sought to be restrained is clearly shown to be such as leaves no doubt of its injurious results, such results as are recognized to be substantial legal injuries. The bill must set forth such a state *of facts* as leaves no room for doubt upon the question of nuisance, for if there is any doubt upon that point the benefit will be given to the defendant. Mere allegations of conclusions or opinions as to the contemplated injuries are not sufficient. The precise manner in which he is to be injured must be stated.

We will not stop to discuss the question, but will simply say that it is the settled law here and elsewhere that an individual cannot recover damages at law, or have relief in equity, against even an admitted public nuisance unless he makes a case of special and particular injury to himself. He must sustain an injury not common to the public.

The gist of the action, the gravamen of the complaint, is the special and particular injury. For the common injury there can be no redress, save by some authorized action in behalf of the people. In all cases where an individual seeks to enjoin a threatened nuisance, he must, in his bill, set forth the character of the nuisance distinctly. He must also set forth particularly the character of the injury that will re-

sult therefrom to him.    Now all that is set forth in this bill as to the character of the nuisance is that it is a steam railway to be constructed on the surface of a street running in front of plaintiffs' property.    Such a structure is not now held to be a nuisance.    Indeed, in some of the States it is denied that its construction imposes an additional burden so as to give the abutting proprietor a right to compensation.    As to the character of the injuries which plaintiffs apprehend will result here they are only such as would attend the construction of a steam surface railway according to approved modern method and custom.    " When a railroad is built under legislative authority and the charter or law under which it is built authorizing the laying of its track on a street, unless the road is negligently constructed or operated, neither the obstruction of the street nor the soot, jarring or danger resulting therefrom makes it either a public or private nuisance."    Wood on Nuisances, 75 ; Rand vs. The Pacific Railroad, 65 Mo., 325 ; Danville, Hazelton and Wilkesbarre Railroad Co. vs. The Commonwealth, 73 Penn. State, 29 ; Fletcher vs. Auburn and Syracuse Railroad Company, 25 Wend., 464.

It is insisted, however, that this road is being constructed without legislative authority in that it is to be used for a private purpose, to wit : the transportation of material for the construction of a hotel, and plaintiffs allege also " that it is not a part of the main line of said railway ; is not part of its line of public transportation ; is not on the line of its right of way to its depot ; is not demanded by any public necessity or convenience ; but is only a branch, switch or spur thrown out for about a mile on this public street by said railway company for its own convenience."    The authority under which it is to be constructed is a resolution of the City Council of St. Augustine.    This allegation of the

bill is not denied.   On the contrary, the defendant justifies
its action under it.

The first question which arises here is whether the City
of St. Augustine, through its Council, has authority to
grant the right as against an abutting proprietor to thus con-
struct a steam railway upon one of its streets.   Under its
charter it has nothing more than the ordinary power to es-
tablish, open and regulate its streets.   It has no express
power to authorize the construction of a steam railway or
any other than the ordinary power in municipalities as to
the streets and commons within its local jurisdiction.   So
far as the title is concerned it is presumed from the allega-
tion of abutting proprietorship that the fee to one-half of
the street is in the owner of the lot adjoining and bounded
by the street.   The construction of the road is, therefore,
without authority either from the State, through the legis-
lative branch of the government, or from the municipal cor-
poration.   Unquestionably this is a public nuisance.   It is
unlawful and there is no doubt that it may be made the
subject of proper proceedings to abate it at the hands of
the State in the local jurisdiction in which it is situated.
I can find, however, no authority for the conclusion which
I would like to reach that an abutting proprietor under the
allegations of this bill as to the character of the contempla-
ted structure has a right to enjoin its threatened construc-
tion even though it be a railway unauthorized by law.
The question of compensation for property taken, if there
is a taking threatened here, is entirely distinct from the
right to enjoin the construction of a railway.   One permits
its construction and makes compensation for a contempla-
ted taking of property, the other denies the right to con-
struct, enjoins it and prevents its existence.   One requires
pay for what is done, the other prohibits its being done,
with or without pay.

The abutting proprietor here has the fee to the middle of the street, but his right, title and interest as against the public so long as it remains a street is a right of way in the street and a right to its continued use as a street.

The authorities sustain the proposition that even though the contemplated railway be a public nuisance as unauthorized by law the abutting proprietor has no right of action if the structure contemplated is an ordinary surface railway operated by steam upon a street in front of property owned by him. The structure here threatened is not alleged to be other than an ordinary surface railway operated by steam, and while there is conflict of authority as to whether there is a *taking* of property as distinct from an *injury* to it in such case, yet as to the question whether it is a nuisance, abatable at the hands of an individual, the authorities seem to be uniform in announcing that he has no such right.

The order of the Circuit Court dissolving the injunction is affirmed, and the case is remanded for further proceedings.