DAVE LOVETT, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. The futility of objecting that the trial judge did not instruct the jury upon all the grades of homicide to which the evidence may be reasonably applicable, must in the absence of a request for instructions on the lesser grades than that of which the accused was convicted, be considered as settled in this court, and as meriting no discussion in future opinions.

2. It is not erroneous to charge, that "the premeditation which the law requires to constitute murder in the first degree need not be for any particular length of time; that it is sufficient if the premeditation was but for a moment, provided that the action of the slayer was the result of such premeditation." The use of the word "moment" does not imply less time than was necessary for deliberating upon the subject of killing and forming a distinct design or determination to kill, of which the defendant was fully conscious before firing the fatal shot. The premeditation or deliberation need not be for any particular length of time, but it of course must be of sufficient duration to enable the slayer, under the circumstances of each case, to form a distinct and conscious intent to kill.

3. The question of premeditation is one of fact for the jury, who must say whether the killing was the result of an intention formed upon premeditation of the subject, and consequently murder in the first degree; or, on the contrary, that the circumstances were such that the killing was not preceded by

deliberation on the subject, resulting in the formation of such a design to kill.

4. A charge defining malice as ordinarily defined by the authorities, and then stating that an act is done maliciously when done on purpose and with evil intent, is not erroneous, nor is it to be taken as qualifying a former instruction to the effect that to constitute murder in the first degree, there must be a killing without authority of law and from a premeditated design to effect the death of the person killed.

5. The instruction to a jury, that "where the law says you must be satisfied beyond a reasonable doubt before you can convict, it means that your mind must be so thoroughly convinced that you would act upon the conviction in matters of the highest concern and importance to yourself," disapproved as requiring no higher degree of proof than a preponderance of evidence, and as giving the juror no definite idea of his duty, and as calculated to mislead him. A reasonable doubt, as explained by best authorities and as heretofore sanctioned by the court, stated.

6. An instruction, that to excuse homicide there must exist on the part of the slayer an actual necessity to kill in order to prevent the commission of a felony or great bodily harm, or a reasonable belief in his mind that such necessity exists, is not erroneous.

7. A charge to the jury, that a "necessity brought about by the party who acts under its compulsion can not be relied upon to justify his conduct; and an aggressor in a personal difficulty, one not reasonably free from fault, can never be heard to acquit himself of liability for its consequences on the ground of self defense," is correct.

8. The trial judge charged : "The owner of premises owns the soil to the middle of the street in front of his premises, subject only to the right of the public to pass and repass upon the highway; and one who stands in front of the premises of another on the

highway, just outside of his enclosure, and abuses the owner of the premises, is a trespasser." There was no testimony justifying the conclusion that the lot was bounded by the street, or that the deceased was the owner of the lot mentioned, or that his premises extended to the side of the street: *Held*, that the charge was irrelevant.

9. An instruction that the law gives the jury the right to recommend the prisoner to the mercy of the court in the case of conviction, if a majority of their number so decide, is not a suggestion to the jury to abuse their discretion to the disadvantage of the accused, but is a substantial compliance with the view heretofore expressed, and still entertained, that the function of the judge in instructing the jury under the act of 1877, sec. 19, p. 448, McClellan's Digest, sec. 2924, R. S., is best performed by simply giving the terms of the act to the jury and informing them that the making or withholding of the recommendation is a matter entirely within the discretion of a majority of them.

Writ of Error to the Circuit Court for Duval county.

## STATEMENT.

The testimony in behalf of the State was as follows :

Neal Mitchell, M. D., testified that one March Scroggins did come to his death in said Duval county, from peritonitis consequent upon a gun-shot wound ; that said wound was inflicted on the eleventh day of September, A. D. 1891, and that death ensued therefrom on the 23d day of September aforesaid.

A. J. Wakefield, M. D., testified to the same tenor and effect.

R. E. Wheeler testified that on the morning of the said shooting he was coming into town from his home in Brooklyn, a division of the city of Jacksonville, and in said Duval county ; that he saw a negro boy standing in front of the premises of said March Scroggins, in the street, about ten feet from the gate of said premises ; that said negro boy was swearing at said March Scroggins, who was at the back of his house drawing water ; that said negro boy did draw an imaginary line on the ground and dared said Scroggins to cross it ; that said Scroggins started towards said negro boy, who then drew his pistol, snapped it, recocked said pistol and shot the said Scroggins ; that then the said boy ran off, crying out that no one should lay hands on him.

Charles Thomas testified that on the morning of said shooting he saw defendant and one George Scroggins walking towards the house of said March Scroggins, and followed them ; that witness stopped in front of the house of said March Scroggins, and on the opposite side of the street ; that he saw the defendant run from behind said house, and said defendant was cursing and swearing ; that said defendant having arrived in front of said house in the street, made a line with his foot and dared said March Scroggins to cross said line ; that said March Scroggins started from the back of his house towards said defendant, saying something, the words of which witness could not distinguish ; that defendant shot with a pistol aimed at said March Scroggins, as the latter reached the gate ; that

10

then said defendant ran off, threatening any one who might attempt to catch him.

Lytle testified that he heard the noise of a pistol, saw some one running, and on reaching said house, found that said March Scroggins had been shot.

The testimony for the defense is as follows :

George Scroggins testified that on the morning of said shooting he met said defendant in the woods practicing with his pistol at various trees ; that in the course of a conversation between the two, defendant asked witness if his uncle, the said March Scroggins, was at home, stating that said March Scroggins owed defendant fifty cents, which he, defendant, wanted to collect.   Witness said "yes," he is at home, and has some money now ; the two then proceeded to said March Scroggins' house ; on arrival defendant requested witness to ask his uncle to come out, but witness advised defendant to go back to the kitchen, where his uncle was preparing breakfast ; that defendant then knocked at kitchen door ; that said March Scroggins opened the door, and without giving defendant time to state the object of his visit, did pick up a stick, and seizing defendant by his neck, did throw him off the steps ; that thereupon defendant ran out of the yard swearing ; that when defendant got outside he called said March Scroggins a " son of a bitch," and dared him to come out ; that his uncle, the said March Scroggins, who was a large, powerful man, much larger and stronger than de-

fendant, started through his house and towards de-
fendant, saying "I will give you a good beating," or
"will beat the life out of you." Witness not clear as
to exact language used ; that when his uncle reached
the gate, defendant shot and then ran.

The defendant for himself testified to the same facts
that preceding witness testified to, but added that the
deceased struck him after throwing him off the steps.

The other facts are stated in the opinion.

*Robert S. Cockrell* for Plaintiff in Error.

As to charge 1—

The statute requires the court, when it undertakes
to instruct, to charge as to *all* the grades of homicide,
which the evidence in the case may reasonably sup-
port, as well as the exceptions to each grade. Glad-
den vs. State, 12 Fla., 562.

As to charge 2—

Though the law does not prescribe what length of
time should elapse between the formation of the de-
sign to kill and its execution, to constitute premedita-
tion, yet there must be a *fully* formed purpose to kill
with enough time for thought, to convince the jury
that the prisoner had become *fully* conscious of the
purpose to be consummated. Carter vs. State, 22
Fla., 553.

As to charge 3—

An act to be malicious must not only be done on pur-
pose and with evil intent, as at common law, but under

our statute, as an ingredient of murder, it must be done unlawfully and with *homicidal* intent, and *without just cause or excuse.* 12 Fla., 117.

To illustrate the distinction between common law and statutory murder (and in this State we have only the latter, see Denham vs. State, 22 Fla., 664), suppose one shoots at another's chickens *in sport* and kills a man, it was and is excusable homicide, but if he shoots at another's chicken with intent to steal and kills a man, it was at common law murder. Here we have an act "done on purpose and with evil intent," but such an act does not constitute "malice" under the purview of our statute as to homicide. 1 Hawk. P. C., Ch. 13, sec. 47.

Hence we say that a charge on a trial for murder that "an act is maliciously done, when it is done on purpose and with evil intent" is erroneous.

As to charge 4—

It contains the words "reasonable doubt," and this reasonable doubt is defined erroneously in charge 5, in the light of which error the jury must be presumed to have been controlled.

As to charge 5—

"The judgment of reasonable men in the ordinary affairs of life, however important, is influenced and controlled by the preponderance of evidence. Juries are permitted and instructed to apply the same rule to the determination of civil actions involving rights of property only. But in the decision of criminal cases, involving life or liberty, something further is required.

There must be more than a preponderance of evidence. There must be in the minds of the jury *an abiding conviction to a moral certainty of the truth of the charge*, derived from a comparison and consideration of the evidence. They must be entirely satisfied of the guilt of the accused, and so a charge that reasonable doubt was such a "doubt as would induce a man of reasonable firmness to act upon in matters of importance to himself"—error. People vs. Ah Sing, 51 Cal., 351, cited in and affirmed in People vs. Bennerly, 25 Pac. (Cal.), 266, and People vs. Walidfrom, 26 Pac. (Cal.), 236.

The Supreme Court of Florida in Earnest vs. State, 20 Fla., 383, use the identical words of the California court, "an abiding conviction to a moral certainty of the truth of the charge," quoting from State vs. Van-Winkle, 6 Nev., 340.

"In criminal cases a greater degree of mental conviction is required than in civil cases is held to be necessary." 29 Fed. Rep., 503.

"An instruction that the proof is deemed sufficient when the evidence is sufficient to impress the judgment of ordinarily prudent men with a conviction on which they would act in an important affair of their own," does not correctly state the law of reasonable doubt. People vs. Terry, 24 Pac. Rep., 33 ; s. c. 84 Cal., 31.

"You will act as a prudent careful business man would act in determining an important matter pertaining to his own affairs." Held error for which a ver-

dict for murder must be set aside.    Territory vs. Bannigan, 46 N. W. Rep., 597 ; s. c. 1 Dak., 451.

The definition of "reasonable doubt" given in Indiana in the case of Bradley vs. State, 31 Ind., 492, contains a qualification which seems all-important. "The jury must be so convinced by the evidence of defendant's guilt that a prudent man would feel safe to act upon that conviction in matters of the highest concern and importance to his own dearest personal interests, *under circumstances where there was no conclusion upon him to act at all.*"

If, for instance, one standing on some vantage ground, sees a conflagration, and is unable to determine whether it be his own dwelling which is on fire or that of a personal enemy, or perhaps a mere brush heap, he will act upon his doubt, in this matter of the highest moment to himself, and rush to the fire ; but surely this is not such a *doubt* as should lead a jury to convict one of a capital offense.

And yet all the elements of that "reasonable doubt," defined in charge 5, are present, and this plaintiff in error was prejudiced by such a charge.

Cases and examples might be readily multiplied, showing the error of this charge, but it is thought that the above will suffice.

As to charge 7—

. If a ground for a reasonable belief existed, it was immaterial whether defendant believed it or not ; and

the attention of the jury should have been directed to the existence or non-existence of such ground and not to-the conviction of defendant's mind, except as a result from the presence or absence of such ground.

As to charge 8—

Even at common law, where slayer did not begin the fight, *or having begun it, has endeavored to decline* it and has killed his adversary, it was chance medley and excusable. 1 East P. C., 280; Fost., 276; Minor's Crim. Law, 44.

As to charge 9—

I submit that defendant had a right to go on deceased's premises to collect a debt and was not a trespasser. Court erred in charging that accused in the street in front of deceased's premises was a trespasser. Undoubtedly he had a right to be there. Certainly he was not a trespasser in the sense and consequences imputed to an aggressor pushing a fight on his adversary. Certainly he was not such a trespasser, in that being on the highway he used insulting words and invited his adversary to combat.

As to the last charge, not numbered, the court erred in not adding thereto that jury may recommend to executive clemency. McClellan's Digest, p. 448, sec. 18.

Again : The court erred in charging that "The law *gives* the jury the *right* to recommend," etc. The statute declares the jury "*may*" recommend, and where the statute directs the doing of a thing for the

sake of justice, the word *"may"* is construed *"shall,"* thus imposing a *duty*, to the performance of which, they were bound by their oath, and not a mere bare *right* or *privilege* so to recommend, if the circumstances of the case require or justified it.    Mitchell vs. Duncan, 7 Fla., 15.

If the above propositions or any of them be correct, the court erred in overruling motion for a new trial.

*The Attorney-General* for Defendant in Error.

RANEY, C. J.:

This cause having been restored to our docket (Lovett vs. State, 29 Fla., 356, 11 South. Rep., 176), it stands now for consideration under such assignments of error as have not been disposed of heretofore (Lovett vs. State, 29 Fla., 356, 11 South. Rep., 172).

I.    The objection urged in connection with the first paragraph of the charge is, that the trial judge should have instructed the jury upon all the grades of homicide to which the evidence may be reasonably applicable.    The futility of such an objection, in the absence of any request for instructions on the lesser grades of homicide, must be regarded as forever settled in this court, and as meriting no discussion in future opinions. The authorities from Cato vs. State, 9 Fla., 163 (A. D. 1860), to Blount vs. State, decided at the present term, are fully reviewed in the latter case; and the case of Gladden vs. State, 12 Fla., 562, cited in behalf of the

plaintiff in error, is not in conflict with them. It is due, however, to the Circuit Judge to say that he did charge as to manslaughter in the third degree, to the extent of giving the statutory definition of it, and no exception is urged to the charge.

II. The judge charged that the premeditation which the law requires need not be for any particular length of time; that it is sufficient if the premeditation was but for a moment, provided that the action of the slayer was the result of such premeditation; and it is to this charge that exception is taken. The preceding paragraph of the charge is, that the killing of any human being without authority of law, when perpetrated with malice aforethought from a premeditated design to effect the death of the person killed, is murder in the first degree; which, in our judgment, is a sufficient statement of the statutory definition in a case where, as here, the design was not to kill a person other than the deceased. The use of the words "with malice aforethought," do not tend to the disadvantage of the accused. Obviously the language excepted to was used as explaining what premeditation is necessary to murder in the first degree. It is apparent that the charge assumes that the jury understood the meaning of the word premeditated. Certainly we can not presume that they did not. The controlling idea of the clause assailed is that the act of killing must be the result of premeditation upon that issue; or, in other words, that there must have been, previous to the act

of killing, deliberation by the slayer upon the question of killing the deceased, resulting in a distinct determination, or well founded design, to kill him, and that such determination or design to kill was carried out or executed in the act of killing. The use of the word "moment" does not imply less time than was necessary for deliberating upon the subject and forming a distinct design or determination to kill, of which the defendant was fully conscious before firing the fatal shot. The premeditation or deliberation need not be for any particular length of time, but it of course must be of sufficient duration to enable the defendant, under the circumstances of each case, to form a distinct and conscious intention to kill. The question of premeditation is one of fact for the jury, who must say whether the killing was the result of an intention formed upon premeditation of the subject and consequently murder in the first degree; or, on the contrary, the circumstances were such that the killing was not preceded by deliberation on the subject resulting in the formation of such a design to kill. These views are not inconsistent with, but conform to, those expressed in Savage and James vs. State, 18 Fla., 909, and Carter vs. State, 22 Fla., 553. They are also sustained by other authorities. State vs. Wieners, 66 Mo., 13; State vs. Harris, 76 Mo., 361; Binns vs. State, 66 Ind., 428; People vs. Foren, 25 Cal., 361; People vs. Pool, 27 Cal., 573; Lang vs. State, 84 Ala., 1; Seams vs. State, *Ibid*, 410. We can not say that the charge was erroneous.

We may here observe that upon a return of the cause for a new trial there will be an opportunity for such fuller or further instructions as may be called for by circumstances of the case tending to prove that the killing was not preceded by the deliberation necessary to murder in the first degree.

III. The third charge given by the judge is: "Malice in legal phrase is never understood to denote general malevolence or unkindness of heart, or enmity towards a particular individual; but it signifies rather the intent from which flows any unlawful and injurious act committed without legal justification. An act is maliciously done when it is done on purpose and with evil intent." The first of these two sentences is to be found *ipsissimis verbis*, in Mr. Bishop's work on Criminal Law, vol. 1, sec. 429, and a long array of authorities are cited in support of it. The criticism made of the instruction is, that an act to be malicious must not only be done on purpose and with evil intent as at common law, but, under our statute, as an ingredient of murder, it must be done unlawfully and with homicidal intent, and without just cause or excuse, and it is urged, as a consequence, that a charge on a trial for murder that an act is "maliciously done when it is done on purpose and with evil intent" is erroneous. As an abstract charge we fail to see any error in it, but think it correctly defines malice. Applied to the case at bar it means that the killing charged in the indictment and described by the evidence was malicious if done on purpose and with evil intent, and so it was; yet saying this did not tell the

jury that this was the sole element of the offense charged, murder in the first degree, or that it was to be taken in qualification of the former instruction stating that there must be a killing without authority of law and from a premeditated design to effect the death of the person killed, to constitute the offense charged. The purpose of the instruction seems to have been entirely misconceived in its criticism, and the former instruction just alluded to has been ignored.

IV.   The basis of the objection to the fourth charge is the alleged error of the fifth as to a reasonable doubt, so we will pass to the latter instruction which defines a reasonable doubt "as such a doubt as spontaneously arises in the mind from the evidence; where the law says that you must be satisfied beyond a reasonable doubt before you can convict, it means that your mind must be so thoroughly convinced that you would act upon the conviction in matters of the highest concern and importance to yourself. If the evidence is such as to lead the guarded discretion of a reasonable and just man to the conclusion that the allegations contained in the indictment are true, then the jury should find the defendant guilty."

The objection to this instruction is the test of the sufficiency of the proof of guilt prescribed in the second clause of the first sentence, which test is: that degree of mental conviction upon which the person would act in matters of the highest concern and importance to himself. The explanation which this

expression gives as the test of the absence of a reason-
able doubt has at least not produced entire satisfac-
tion.    It is to be found in Starkie and Greenleaf in a
slightly changed form, which is that he "must be so
convinced by the evidence that he would venture to
act upon the conviction in matters of the highest con-
cern and importance to himself." Starkie on Evi-
dence,——; 1 Greenleaf on Evidence, sec. 2. It
seems to be founded upon a charge given by Lord
Tenterden (Thompson on Trials, sec. 2470; 3 Green-
leaf on Ev. (13th ed.), sec. 29, note 2, though that
charge taken *as a whole* does not seem to us to be so
much subject to the criticism which the expression
used in the record before us has evoked.

In State vs. Oscar, 7 Jones (Law), 305, the Supreme
Court of North Carolina commented on the word "ven-
ture," omitted from the charge then before that court,
as being material, and implying that the party sup-
posed to be acting is making a *venture* which one way
or the other will be of the highest importance to his
own interest, and that such idea of venture or hazard
in a matter of life or death, or the loss or gain of a
large estate, is not necessarily involved in language
like that used here, and in the charge before them. In
People vs. Ah Sing, 51 Cal., 372, the clause held bad,
and occurring in a charge which, upon this point, was
otherwise unexceptional, was : *If the evidence is such
that a man of prudence would act upon it in his own
affairs of the greatest importance, then there can not*

*remain a reasonable doubt within the meaning of the law.* The court observed that it was a mistake to say that there could not remain a reasonable doubt where the evidence was of this degree; that men frequently act in their own grave and important concerns, upon a conclusion formed after having deliberately weighed all the circumstances, yet do so without being fully convinced of the correctness of such conclusion; and that this degree of certainty was altogether insufficient for a conviction in a criminal cause. The same conclusion was reached in People vs. Brannon, 47 Cal., 96, and People vs. Bemmerly, 87 Cal., 117; Territory vs. Bannigan, 1 Dak., 451, where the expressions "important affairs," and "matters of importance," and "an important matter pertaining to his own affairs," were used; and previously in the case of Jane vs. Commonwealth, 2 Met. (Ky.), 30, where the test given was that degree of certainty which the jury would act on in their "grave and important concerns," the Supreme Court of Kentucky said that to justify a verdict of guilty it was not only necessary that the jurors should be so convinced by the evidence that they would venture to act upon that conviction in matters of the *highest* importance to their own interests, but they must moreover be so convinced as to exclude from their minds all reasonable doubt of the guilt of the accused. That if the charge did not expressly authorize the jury to find a verdict according to the preponderance of the evidence, it authorized

them to weigh the facts and circumstances proven, and, when thus weighed, if their conclusion was not that the accused was guilty, but that there was that degree of certainty in the case that they would act on it in their own grave and important concerns, then they would be justified in returning a verdict of guilty. That in this respect the instruction was misleading and calculated to induce the jury to believe that they had a right to decide according to the weight or preponderance of the evidence, the rule in civil cases. In Arnold vs. State, 23 Ind., 170, it was said that a reasonable doubt exists when the evidence is not sufficient to satisfy the judgment of the truth of a proposition with such certainty that a prudent man would feel safe in acting upon it in his own important affairs; but in Bradley vs. State, 31 *Ibid*, 492, where the trial court seems to have followed the former case as establishing the test of every reasonable doubt, it was, in effect, stated that this was given but as an illustration of a case where a reasonable doubt would exist, and not as a test for determining all doubts; and the conclusion of the court in Bradley vs. State was that there should be added to Mr. Starkie's definition the qualification that there should be such a conviction of the truth of the proposition that a prudent man would be safe to act upon the conviction under circumstances where there was no compulsion resting upon him to act at all. "In other words," says the opinion, "a prudent man compelled to do one of two things affecting matters of the

utmost moment to himself might, and doubtless would, do that thing which a mere preponderance of evidence satisfied him was for the best, and yet such a conviction would fall far short of that required to satisfy the mind of a juror in a criminal case. It must induce such faith in the truth of the facts which the evidence tends to establish that a prudent man might without distrust voluntarily act upon their assumed existence in matters of the highest import to himself." And commenting upon the words "important affairs," it is further said, it must be such a certainty as would justify the mind to act not only in matters of importance, "but in those of the highest importance involving the dearest interests," and that nothing short of this could serve as an example of that moral certainty which should alone authorize a verdict of guilty. See also Garfield vs. State, 74 Ind., 60. In State vs. Nash, 7 Iowa, 349, the charge was, that if the whole evidence taken together produced such a conviction on the minds of the jury of the guilt of the prisoner as that they would act upon it in a matter of the highest importance to themselves, in a like case, it was their duty to convict, and was sustained as proper under the circumstances and not liable to the objections made against it, among which were that there could be no such like case in which a man is called upon to act in his own affairs, and that it permitted a conviction on a bare preponderance of evidence. The fourth sentence of the instruction as to reasonable doubt, in State vs.

Ostrander, 18 Iowa, 435, 458, was like that just given, and the court held it was not erroneous, yet they said they had never thought it particularly happy or of essential value as a guide to a jury. The judgment was affirmed, the court taking occasion, however, to express itself, through Judge Dillon, more fully as to what constitutes proof beyond a reasonable doubt. In Potter vs. State, 14 Neb., 540, it was said of a definition of a reasonable doubt in which substantially the same sentence appeared, that while there were some decisions which probably do not sustain the definition, there were others which did ; that it was not visionary, but had the qualities of being reasonable, practicable and capable of being understood by ordinary minds ; and it was approved.

These decisions are more directly expressive upon the language under consideration than any we have found, and our judgment is, that it is subject to the criticism made of it by the California and Kentucky courts, and other courts adopting the same views. The views and action of the Indiana court constitute a repudiation of the charge. The Nebraska court alone seems to give the instruction a full approval. We think that besides requiring no higher degree of proof than a preponderance of evidence, the instruction gives the juror no definite idea of his duty, and is calculated to mislead him.

We are aware of the recognized difficulty of defining a reasonable doubt, and have no disposition to

conceal the eminent judicial sources, referred to below, from which we have drawn the substance of what we are now to say on the subject: The accused is always presumed to be innocent of the offense charged until he is proved guilty; and to overcome this presumption and establish his guilt it is not sufficient to furnish a mere preponderance of evidence tending to prove his guilt, nor to prove a mere probability of his guilt, but proof of his guilt to the exclusion of or beyond a reasonable doubt is indispensable. The burden of such proof is upon the State, and it is to the evidence introduced upon the trial, and to it alone, that the jury are to look for such proof. Keeping this in mind, as jurors charged with the solemn duty in hand they must carefully, impartially and conscientiously consider, compare and weigh all the testimony, and if after doing this they find that their understanding, judgment and reason are satisfied and convinced by it to the extent of having a full, firm and abiding conviction to a moral certainty that the charge is true, then the charge has been proved to the exclusion of any reasonable doubt, and it is their duty to convict. A doubt which is a mere possible doubt, or a speculative, imaginary or forced doubt, is not a reasonable, but an unreasonable, doubt, and for the reason that everything relating to human affairs is open to doubt of this character, and such a doubt ought not to control or influence the jury to render a verdict of acquittal where they have an abiding conviction of the truth of the charge as indicated above. On the other hand, if after carefully considering, comparing and weighing

all the testimony, there is not an abiding conviction to a reasonable and moral certainty of the truth of the charge, or if having a conviction, it is yet one which is not abiding or stable, but wavers, or vacillates, or is one of which there is not a moral certainty, then the truth of the charge is not made out beyond a reasonable doubt, and there must be an acquittal, because the doubt is reasonable. A doubt which is not suggested by or does not arise from the testimony, is not a reasonable doubt, and should never be considered; or, in other words, if the testimony produces a conviction of the character indicated above as being sufficient to prove the charge to the exclusion of a reasonable doubt, the jury have no right to go outside of the testimony for doubts of any kind. Commonwealth vs. Webster, 5 Cush., 295, 320, by Shaw, C. J.; State vs. Ostrander, 18 Iowa, 435, 459, by Dillon, J.

From what is said in the last preceding paragraph we think there will be no difficulty in the future in formulating a brief but sufficient charge on the question of a reasonable doubt, adhering to the idea of it heretofore sanctioned by this court (Earnest vs. State, 20 Fla., 383), and avoiding any of the questionable expressions as to it.

V. The seventh charge was, that to excuse homicide there must exist on the part of the slayer an actual necessity to kill in order to prevent the commission of a felony or great bodily harm, or a reasonable belief in his mind that such necessity exists. The objection made to it is, that if a ground for a reasonable belief existed, it was immaterial whether the defendant be-

lieved it or not, and that the attention of the jury should have been drawn to the existence or non-existence of such ground, and not to the conviction of defendant's mind except as a result from the presence or absence of such ground. If there is not an actual necessity to kill in order to save one's life or to prevent great bodily harm, there must, to successfully invoke the plea of self-defense, be such an apparent necessity as would naturally cause a reasonably cautious or prudent man to believe that the necessity was actual, and acting under these circumstances, a defendant will be accredited by the jury with the belief that the danger was actual, and the killing will be held excusable. The law regards homicide committed under such circumstances of apparent danger as done under the impelling influence of a reasonable belief that the stated necessity exists, and therefore excuses the killing the same as if the necessity had been real, instead of merely apparent ; but it does not regard the belief as immaterial. Smith vs. State, 25 Fla., 517, 6 South. Rep., 482. If it did, its principle would be to justify homicide when the slayer does not feel that there was any necessity to kill. If counsel desired a charge upon the evidence from which the jury might have inferred the existence of the "reasonable belief," he should have requested it. Blount vs. State, *supra ;* State vs. Reed, 62 Me., 129. The jury could not have found that such reasonable belief existed in the mind of the defendant except from evidence justifying its existence, and hence when the judge said, that in the absence of the actual necessity to kill,

there must be " a reasonable belief in the mind of the defendant that the necessity exists," he meant that the existence of the necessary belief was to be found from the evidence justifying it.    Certainly nothing to the contrary was implied.    The charge was not erroneous.

VI.    The judge also gave the following charge: A necessity brought about by the party who acts under its compulsion can not be relied upon to justify his conduct.    The aggressor in a personal difficulty, one not reasonably free from fault, can never be heard to acquit himself of liability for its consequences, on the ground of self defense.

The charge is carefully drawn, and is supported by the authorities.    1 Bishop's Crim. Law, sec. 869; Russell on Crimes, 669; 1 Hale's P. C., 405; Vaiden vs. Commonwealth, 12 Gratt., 717; Haynes vs. State, 17 Ga., 465; Myers vs. State, 62 Ala., 599.    We perceive no error in it, nor is any assault made upon it except the remark, that "even at the common law where the slayer did not begin the fight, or having begun it has endeavored to decline it and has killed his adversary, it was chance medley and excuse;" citing East's P. C., 280 ; Foster, 276 ; Minor's Crim. Law, 44.    These authorities are not at hand ; still we have no idea that there is in them anything which conflicts with the charge given.    There is, however, certainly in the circumstances of this case no conduct of the deceased which could be tortured into a justification or excuse

of the killing, as making a case of self-defense, nor was there any endeavor by the accused to decline a fight except the act of shooting and killing an unarmed man who was approaching his challenge.

VII. The ninth charge is also assigned as error.    It is : The owner of premises owns the soil to the middle of the street in front of his premises, subject only to the right of the public lawfully to pass and repass upon the highway ; and one who stands in front of the premises of another on the highway, just outside of his enclosure, and abuses the owner of the premises, is a trespasser.

The meaning of this charge is, that the abusing party is under the circumstances indicated a trespasser upon the property rights of the supposed abutting owner whose title extends to the middle of the street, and it is based upon the theory that the former party is using the latter's land outside of the lot for other than *street* purposes, and hence illegally.    The charge may have been suggested by Angell on Highways, section 305, cited in Geiger vs. Filer, 8 Fla., 325 ; see also Adams vs. Rivers, 11 Barb., 390.    It is, however, not always necessarily the case that the title of the owner of the lot extends to the middle of the street, or further than the boundary of the lot.    3 Kent's Com., m. p. 434 ; Willoughby vs. Jenks, 20 Wend., 96.    The grant or title under which he holds may otherwise limit his ownership, and whether the title extends to the centre, or only to the side of the highway, is a

question of construction of the grant ; but in the absence of words which clearly manifest the latter or more limited intent, the former or more liberal purpose will always be presumed to have been intended by the grantor. Florida Southern Ry. Co. vs. Brown, 23 Fla., 104, 1 South. Rep., 512; City of Boston vs. Richardson, 95 Mass. (13 Allen), 146 ; Cox vs. L. N. A. & C. R. Co., 48 Ind., 178. A grant of land bounded by a highway carries the highway to the centre of the highway, if the grantor owned to the centre, and there be no words or specific description showing a contrary intent. 3 Kent's Com., m. p. 433, 434. In Rice vs. Worcester, 11 Gray, 283, *note*, the decision was that the title of the owner, the land abutting on a highway, should be presumed to extend to the centre of the highway, the way being one so ancient that its origin was unknown. The presumption, or inference of law, is always, in the absence of a clear showing to the contrary, that the title of the owner of a lot bounded on a public highway extends out to the centre of the highway. Florida Southern Ry. Co. vs. Brown, *supra ;* Garnett vs. Jacksonville, St. Augustine & H. R. R. Co., 20 Fla., 889 ; Kent, *supra ;* Elliott on Roads and Streets, 519 ; Bissel vs. New York Central R. Co., 23 N. Y., 61, 64 ; Smith vs. Slocumb, 11 Gray, 280 ; Perley vs. Chandler, 6 Mass., 453. The rule is founded upon the improbability of a grantor's retaining the title to the land under the highway which can hardly ever be of any use to him. Though it be the presumption that when one is shown to be the owner of a lot bounded on a highway, that he is to be held, in the

absence of proof to the contrary, to be the owner of the land, subject to the public easement, to the centre of the highway, we fail to see any evidence in this record that is sufficient to justify the conclusion that there was a lot which was bounded by a street, or that the deceased was the owner of such a lot. The testimony does not even show that the deceased's premises extended to the side of the street. It may be natural to assume that they did, but the evidence does not authorize it. The best that can be said of the evidence as calling for or justifying this charge is that it was testified that the accused "was standing in front of the premises of March Scroggins, in the street, about ten feet from the gate of said premises;" and that accused "stopped in front of the house of March Scroggins, and on the opposite side of the street," and that "defendant ran from behind said house, * * and having arrived in front of said house in the street," and that "Scroggins started from the back of his house towards defendant, * * and that defendant shot with a pistol at Scroggins as the latter reached the gate;" but neither this nor anything in the record is evidence from which it can be inferred that March Scroggins' "premises," or "house," or his "home," as it is elsewhere called, ran out to or were bounded by the street, or that he was the owner of any such lot of land. The charge was irrelevant, and under the circumstances should not have been given; and, without expressing any opinion on the authorities first cited in this paragraph, in so far as they relate to this point, we feel justified in saying that no harm can result from

an omission to charge on the point in the future progress of the cause.

VII. An instruction given by the judge was: The law gives the jury the right to recommend the prisoner to the mercy of the court in case of conviction, if a majority of their number so decide. The objection urged to this is that as the act of 1868, sec. 18, p. 448, McClellan's Digest, sec. 2923, R. S., says the jury "may" recommend any prisoner to mercy, it imposes on the jury, (as the word *may* is to be construed, *shall*), a duty, to the performance of which they are bound by their oaths, if the circumstances of the case require or justify it, and does not give a "mere bare right" or privilege so to recommend. The recommendation under this statute is the act of the *entire jury.* The act of 1877, sec. 19, p. 448, McClellan's Digest, sec. 2924, R. S., the one upon which the judge was speaking, provides that "whoever is convicted of a capital offense and recommended to the mercy of the court by a *majority of the jury* in their verdict, shall be sentenced to imprisonment in the State prison for life, with or without solitary confinement, at the discretion of the court." A recommendation under the former statute has no effect on the character of the punishment or sentence, whereas one under the latter reduces the death penalty in convictions of capital offenses to imprisonment for life. In Garner vs. State, 28 Fla., 113, 9 South. Rep., 835, we held that the function of instructing the jury under the latter statute is best performed by simply giving the terms of the

act to the jury, and informing them that the making or withholding the recommendation is a matter which the law has placed entirely within the discretion of a majority of them. This is still our opinion, construing the latter act either alone or in connection with the former one; and what was said by the Circuit Judge is a substantial compliance with this view as to the discretion of the majority of the jury. The language used is not a suggestion to abuse the discretion to the disadvantage of the accused. If the judge did not read the sections to the jury, counsel should have done so if it was deemed material to the accused. Newton vs. State, 21 Fla., 53; Denham vs. State, 22 Fla., 664; Keech vs. State, 15 Fla., 591.

The judgment is reversed, and the cause is remanded for a new trial.